Clarence DIXON, Robert Doyle, Anthony J. Boin, Joseph Bukauski, John A. Clancy, Charles F. Daugherty, Russell Harper, Donald M. Leigh, Louis Limper, William McDonough, William McManus, Walter Nockles, Gerald Wagner, Edwin R. Gendit, Earl Ruhnke, Harold P. Corrigan, Mark O'Bannon, John F. Emody, Jr., and George A. Truesdale, on behalf of themselves and all those similarly situated, Plaintiffs–Appellees,

v.

CITY OF CHICAGO and Harold Washington, Defendants/Cross–Plaintiffs–Appellees,

and

Chicago Firefighters Union Local No. 2, Defendant/Cross–Defendant–Appellant.

No. 89–3456.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1991.

Decided Nov. 20, 1991.

Margaret S. Garvey, Freeborn & Peters, Chicago, Ill., Rossie D. Alston, Jr., W. James Young (argued), National Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs-appellees.

David Johnson, Asst. Corp. Counsel, Mardell Nereim (argued), Office of the Corp. Counsel, Appeals Div., Chicago, Ill., for defendants-appellants.

Stephen B. Horwitz (argued), Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for defendant/cross-defendant-appellant.

Before CUMMINGS, EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The plaintiffs, a class of non-union firefighters employed by the City of Chicago, brought suit in July 1986 to challenge the validity of the "fair share" provision of the City's collective bargaining agreement with Chicago Firefighters Union Local No. 2. This provision required the City to deduct automatically that portion of the nonunion employees' salaries attributable to their "fair share" of Union expenditures made during the collective bargaining process. In effect, these "fair share" fees prevented nonunion employee bargaining units from reaping the benefits of Union negotiations without some monetary contribution.

■ In February 1987, the Union and the plaintiffs reached a settlement. The Union agreed to modify its internal procedures to ensure that fair share notice was consistent with federal law, and to refund any previous fair share fees which surpassed federal limitations for fair share arrangements.[1] The City, however, refused to join the February, 1987 settlement agreement between the plaintiffs and the Union. It contested its liability and moved to dismiss the plaintiffs' suit, but the district court denied its motion on June 30, 1987. The City then filed an answer and presented a cross-claim against the Union, arguing that the Union's collective bargaining agreement required it to indemnify the City for any monetary liability. Shortly thereafter, on September 30, 1987, the City and the plaintiffs arrived at a parallel settlement in which the City agreed to inspect the Union's future fair share notices to ensure compliance with federal law, to decline to post defective notices, to discontinue the fair share procedure until the Union provides the City with complying notice, to require copies of the complying notices to be posted and to cease the automatic deduction of costs for members electing to pay their costs directly to the Union. The district court tentatively approved the plaintiffs' settlement agreements with both the Union and the City.

The district court gave its final approval of the two settlement agreements on March 1, 1989, and the plaintiffs then submitted their attorney's fees petition. On October 23, 1989, the district court awarded $43,710.00 in attorney's fees to the plaintiffs, and granted summary judgment to the City on its cross-claim for indemnification by the Union. The Union now appeals both of these decisions.

■ We first examine whether the district court properly concluded that the plaintiffs are prevailing parties within the meaning of 42 U.S.C. § 1988 and are thereby entitled to an award of attorney's fees. To qualify as a prevailing party under 42

---

1. The Supreme Court has recognized the validity of fair share fees, but has also identified several limitations on their collection as required by the First and Fourteenth Amendments. First, fair share fees may not exceed the amount necessary to cover the nonunion employee's proportionate share of the union's expenditures in negotiating the collective bargaining agreement. *Ellis v. Brotherhood of Railway, Airline and Steamship Employees*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). Second, fair share fees may not be collected for ideological or political causes with which the non-union employee does not agree. *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). And finally, the collection of fair share fees must include "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Chicago Teachers Union Local No. 1, AFT, AFL–CIO v. Hudson*, 475 U.S. 292, 310, 106 S.Ct. 1066, 1078, 89 L.Ed.2d 232 (1986).

U.S.C. § 1988, a plaintiff must succeed on a significant issue in litigation which achieves some of the benefit the party sought in bringing suit. *Hensley v. Eckerhart*, 461 U.S. 424, 443, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). A plaintiff may also merit prevailing party status when relief is obtained through a settlement rather than a formal judgment. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). When a case is settled or a disposition of claims is achieved without full litigation on the merits, this court applies a two-part test to determine prevailing party status. First, the plaintiff's lawsuit must be causally linked to the achievement of the relief obtained. Second, the suit must have prompted the defendant to act or cease its behavior; the defendant cannot have acted "wholly gratuitously" in response to the plaintiff's claims. *In Re Burlington Northern, Emp. Practices Lit.*, 832 F.2d 422, 425 (7th Cir.1987); *Harrington v. DeVito*, 656 F.2d 264, 266–67 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). A different standard of review applies to each step of this test. We review the first step—the determination of whether the plaintiff's lawsuit is causally linked to relief provided by the defendant—under the clearly erroneous standard. *Burlington*, 832 F.2d at 425; *Perlman v. City of Chicago*, 801 F.2d 262, 268 (7th Cir.1986); *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564, 569 (7th Cir.1983). However, we review the second step—the determination of whether the defendant acted wholly gratuitously—under the abuse of discretion standard. *Burlington*, 832 F.2d at 425; *Gekas v. Attorney Registration & Disciplinary Commission*, 793 F.2d 846, 849–50 (7th Cir. 1986).

 The Union argues that the district court committed reversible error by treating the plaintiffs as prevailing parties, because the plaintiffs "neither obtained the relief requested in their complaint nor redressed any purported deficiencies that went to the merits of their claim." In the alternative, the Union contends that the settlement agreements were gratuitous actions bearing little, if any, causal connection with the plaintiffs' lawsuit. We disagree with both arguments.

A review of the record reveals that the plaintiffs succeeded in achieving a substantial portion of the remedies they sought. The crux of the plaintiffs' claim for relief focused on enjoining the Union and the City from enforcing the automatic fair share salary deduction authorized by their collective bargaining agreement. In their complaint, the plaintiffs alleged that withholding these salary deductions "without giving plaintiffs advance notice of the basis for the fee, an opportunity to object [to the fee] and the means to a reasonably prompt decision ... by an independent decision maker" violated their due process rights as embodied in the first and fourteenth amendments. The settlement agreements remedied these grievances in two significant respects. First, by conceding that the plaintiffs were entitled to receive notice which complied with federal law as set out in *Chicago Teachers Union Local No. 1, AFT, AFL–CIO v. Hudson*, the Union essentially agreed to provide "... an adequate explanation for the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and an escrow for the amounts reasonably in dispute while such challenges are pending." 475 U.S. 292, 310, 106 S.Ct. 1066, 1078, 89 L.Ed.2d 232 (1986). This concession discontinued the enforcement of the automatic salary deductions and established the plaintiffs' right to pay their fair share fee directly to the collective bargaining representative for only those matters with which they could be lawfully charged. Second, by agreeing to review the adequacy of the Union's notice to ensure its compliance with *Hudson*, the City acknowledged its responsibility to protect the plaintiff's constitutional rights—a responsibility which, prior to settlement, the City had denied. In short, the plaintiffs succeeded in replacing involuntary salary deductions with a fair share procedure which better protected their rights during the fair share fee collection process. And, as the district court pointed

out, "[t]he settlement agreements disposing of this matter, in ensuring the 'fair share' collection procedures comply with *Hudson,* 475 U.S. 292, 106 S.Ct. 1066, amount to plaintiffs' success on a significant issue."

In light of the above settlement terms, we cannot say that the district court was clearly erroneous in its finding that the plaintiffs' success in this litigation was substantial enough to warrant prevailing party status.

The Union's alternative contention that the settlement terms were "gratuitous" responses to the plaintiffs' suit is similarly flawed. The district court specifically indicated that it was "not persuaded by the Union's characterization of these changes as gratuitous." The court reasoned that "[i]f the Union truly intended to alter its conduct irrespective of this action, then it would not have taken six months to settle." It further noted that the defendant's concessions should not be attributed to *Hudson* rather than the plaintiffs' lawsuit to force the Union's compliance with federal law. While we think the length of time it took to reach a settlement should not reflect so adversely on the defendant's conduct—for the plaintiffs themselves may have been partially at fault for this delay, if their demands were unrealistic—we cannot say that the district court acted unreasonably in determining that the plaintiffs' lawsuit prompted the defendant's concessions.

By either test, the plaintiffs were the prevailing party under § 1988 and the district court did not abuse its discretion in awarding plaintiffs $43,710.00 in attorney's fees.

■ The second issue the Union raises on appeal is whether it should be required to indemnify the City for the attorney's fees due the plaintiffs. The Union claims that the indemnification clause of the collective bargaining between the City and the Union required the City to mitigate liability by entering in the earlier settlement agreement. According to section 3.3 of the collective bargaining agreement,

The Union shall indemnify and save the Employer harmless against any and all claims, demands, suits or other forms of liability that shall arise out of or by reason of action taken or not taken by the Employer for the purpose of complying with the above provisions of the Article, or in reliance on any list, notice, certification or assignment furnished under any provisions.

The Union argues that it should not have to indemnify the City for attorney's fees incurred by the plaintiffs after February 9, 1987, because the City had an obligation to mitigate damages by signing onto the February settlement agreement. Again, we do not agree.

This indemnity clause provides broad protection to the City in connection with the withholding of fair share fees. Its terms do not impose on the City either an express or implicit duty to mitigate damages by signing onto an earlier settlement agreement negotiated by the Union. Quite the contrary, this clause would have required the Union to indemnify the City for any liability incurred by the City even if the Union had not been a party to the action. Nor do its terms require the City to tender its defense to the Union. As the district court noted, "[t]he indemnification clause is not akin to an insurance policy requiring the insured to tender its defense. The clause does not contain such a condition, and the court will not manufacture one."

■ Even assuming that section 3.3 imposed a duty on the City to mitigate damages by entering the February, 1987 settlement agreement, the plaintiffs' conduct during the course of the settlement negotiations excused the City's obligation. The record indicates that the plaintiffs may have been responsible for their failure to reach a settlement with the City, since they were "... unwilling to accept anything in the settlement agreement that could be construed to indicate that the City is not liable." And the Union itself stated in July, 1987 that the "plaintiffs in no small measure, are responsible for the City's failure to enter into the Settlement Agreement...." Given these circumstances, it is

far from evident that the City should be held accountable for its refusal to sign onto the February, 1987 settlement between the plaintiffs and the Union.

There were no questions of material fact and the district court properly resolved the legal question of indemnification presented. Summary judgment was appropriate.

Accordingly, we AFFIRM the district court's order awarding attorney's fees to the plaintiffs, and the grant of summary judgment directing the Union to indemnify the City.