### David CADY

v.

### CITY OF CHICAGO, Jay R. Franke, Reverend John J. Jamnicky and Archdiocese of Chicago.

No. 92 C 7932.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 24, 1993.

---

Michael Null, Reed Lee, Chicago, IL, for plaintiff.

Anita K. Modak–Truvan of Corporation Counsel, Chicago, IL, for City of Chicago & Franke.

Marlaine J. Mevisk, Mayer, Brown & Platt, Chicago, IL, for Jamnicky & Archdiocese.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

In December 1992 David Cady ("Cady") brought this action under 42 U.S.C. § 1983 against two public defendants (City of Chicago and Commissioner Jay Franke of its Department of Aviation) and two nonpublic defendants (the Archdiocese of Chicago and Father John Jamnicky, Chaplain of the O'Hare Airport Chapel). Cady wanted to display religious literature in a public forum (a literature rack located in the shelf area outside of the chapel at O'Hare Airport), but he had been deterred from doing so because the public defendants had imposed a requirement of prior approval by Father Jamnicky. There were no standards whatever to cabin the grant or denial of such approval, but Father Jamnicky had told Cady that in any event he would not approve any literature that had anything negative to say about any other religion.

Thus faced with a challenge to their censorship of any religious materials that contained any such negative statements (especially anything critical of Roman Catholicism, the religion maintained and fostered by the Archdiocese and Father Jamnicky), defendants chose to finesse the problem by simply removing the literature rack entirely on February 5 of this year. With no continuing controversy then before it for adjudication, this Court accordingly dismissed the action as moot on February 18. Cady has now moved for an award of fees as the asserted "prevailing party" under 42 U.S.C. § 1988 ("Section 1988"), and the parties have briefed that issue.

There is of course no question that defendants have suffered a detriment by changing their pre-litigation course of conduct. It is equally unquestionable that Cady's lawsuit was the catalyst that caused defendants to do so—but for his filing of the Complaint, assuredly defendants would still have been doing business at the same old stand.[1] But unlike the law of contracts, where the requirement of consideration for a contractual promise may be satisfied either by a benefit obtained by the promisor or a detriment sustained by the promisee, the "prevailing party" under Section 1988 must have attained at least part of the goal that was sought to be accomplished by filing the lawsuit. In this case what Cady wanted was the ability to exercise his own First Amendment rights [2]—to get an uncensored forum for dis-

---

1. "Doing business" is of course used in the figurative rather than the literal sense.

2. As always, this opinion adheres to the conventional and convenient (though technically impre- cise) practice of referring to the First Amendment's underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and

tribution of his own religious literature. Instead what defendants did was to remove the forum itself, so that it was no longer available either to Cady or to anyone else (including the Archdiocese).

Thus Cady himself derived no benefit from this action, except perhaps the purely psychic satisfaction of having forced defendants to understand that their prior practice had violated the Constitution and therefore had to be abandoned.[3] But the establishment (or the inferential establishment) of such a negative abstraction is not compensable under Section 1988, any more than was the theoretical victory obtained by plaintiff in *Farrar v. Hobby,* — U.S. ——, —— – ——, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992): There has been no "material alteration of the legal relationship of the parties" within the meaning of *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989).

In sum, even though Cady may perhaps have stimulated an intangible public good by triggering defendants' abandonment of an unconstitutional course of conduct, he was not a "prevailing party" in the Section 1988 sense. Accordingly his motion for an award of fees must be and is denied.[4]

---

has been construed to embody such Bill of Rights guaranties).

**3.** This Court's opinion in *Doe v. Village of Crestwood,* 764 F.Supp. 1258 (N.D.Ill.1991) affords a meaningful contrast to this case. In *Village of Crestwood* the plaintiff had challenged the Village's involvement in religious activity (the holding of a Catholic mass under Village sponsorship) because it constituted an establishment-of-religion violation of the First Amendment—more specifically, plaintiff's complaint sought to force the cessation of that activity. When the Village then abandoned the complained-of activity under the pressure of the lawsuit, plaintiff had effectively prevailed by accomplishing the purpose for which the suit was brought in the first place.

See our Court of Appeals opinion, 917 F.2d 1476 (7th Cir.1990), affirming on the merits this Court's granting of a temporary restraining order (effectively a preliminary injunction) against Village sponsorship of the mass.

**4.** It is always well to remember that despite the very substantial proliferation of statutes that provide for fee shifting (see, e.g., the tabulation in the appendix to Justice Brennan's dissent in *Marek v. Chesny,* 473 U.S. 1, 43–51, 105 S.Ct. 3012, 3034–38, 87 L.Ed.2d 1 (1985)), our legal system continues to view as the norm the so-called "American Rule" under which each litigant—win or lose—bears his, her or its litigation expense. Thus no one-to-one correlation exists between litigation success and obtaining a fee award.