**James Eric JOHNSON, and Jerry M. Croker, Plaintiffs,**

v.

**LAFAYETTE FIRE FIGHTERS' ASSOCIATION LOCAL 472, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL–CIO–CLC, Defendant.**

No. 4:92cv60 AS.

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

July 22, 1994.

John S. Damm, Miller Tolbert Muehlhausen Muehlhausen and Groff, Logansport, IN, W. James Young, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, VA, for plaintiffs.

John C. Ruckelshaus, David T. Hasbrook, Ruckelshaus Roland Hasbrook and O'Connor, Indianapolis, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. Procedural History

On August 24, 1992, this claim was filed under 42 U.S.C. § 1983. The plaintiffs,

James Eric Johnson and Jerry M. Croker, are fire fighters employed by the city of Lafayette, Indiana. The defendant is Lafayette Fire Fighters' Association Local 472, International Association of Fire Fighters, AFL–CIO–CLC ("Local 472"). The plaintiffs alleged that the defendant had violated the nonmembers' Constitutional rights. Specifically, the Lafayette Union had demanded that the plaintiffs pay services charges or agency fees; alternately, the defendant threatened "further action." The factual circumstances of this litigation are set forth in this court's Memorandum and Order of March 12; here the court only reiterates those pertinent to the issue before the court. On April 8, 1994, the plaintiffs petitioned the court for attorneys' fees and costs pursuant to 42 U.S.C. § 1988. On June 1, 1994, the defendant filed its brief in opposition to the plaintiffs' petition. Neither party has appealed any order of this court.

## II. DISCUSSION

As the Supreme Court wrote in *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), a "request for attorney's fees should not result in a second major litigation." In the experience of this Judge, such petitions have come close to approximating another trial. In this case, the defendant challenges the plaintiffs' status as "prevailing party," their entitlement to fees, and their market rate.[1]

The plaintiffs claim that they are "prevailing parties" pursuant to 42 U.S.C. § 1988; thus, they argue, they are entitled to attorneys' fees and costs. The defendants dispute the plaintiffs' status as prevailing parties. Further, in a novel argument, the defendant claims that the plaintiffs' "cost and fee petition is moot because plaintiffs' have incurred no costs or fees." Defendant's Brief at 4. This court will first address the prevailing party issue before wading into the defendant's mootness argument.

### A. "Prevailing Party" Pursuant to Section 1988

The plaintiffs claim that they are "prevailing parties" within the meaning of 42 U.S.C. § 1988:

Here, there can be no good-faith dispute that Plaintiffs are "prevailing parties" within the meaning of 42 U.S.C. § 1988. Prior to the filing of the instant lawsuit, the union virtually ignored one of the Plaintiff's prior invocation of his rights under *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 306–10 [106 S.Ct. 1066, 1075–78, 89 L.Ed.2d 232] (1986). Once suit was filed, however, the union immediately engaged in a crash effort to "back and fill," attempting to bring itself into compliance with *Hudson*. This effort—which has to this date fallen short—continued throughout the litigation, and was clearly in response to the litigation and to the exposure to liability. Thus, for many of the same reasons that the Seventh Circuit affirmed the lower court's determination that similarly-situated nonmember were prevailing parties in *Dixon*, it is clear that the Plaintiffs herein are "prevailing parties."

Plaintiff's Petition at 7. As an initial matter, this court notes that the seminal Supreme Court definition of "prevailing party" no longer requires a party to prevail on all issues:

To qualify as a prevailing party under 42 U.S.C. § 1988, a plaintiff must succeed on a significant issue in litigation which achieves some of the benefit the party sought in bringing suit.

*Hensley v. Eckerhart*, 461 U.S. 424, 443, 103 S.Ct. 1933, 1944, 76 L.Ed.2d 40 (1983). The plaintiffs cite *Dixon v. City of Chicago*, 948 F.2d 355 (7th Cir.1991), in support of their premise that the Seventh Circuit has drawn an even wider circle:

A plaintiff may also merit prevailing party status when relief is obtained through a settlement rather than a formal judgment. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). When a case is settled or a disposition of

---

1. Local 472 also argues that the plaintiffs' filing of their petition for attorney's fees was untimely. This judge ruled on that "opposition" in an Or-
der on April 20, 1994, and finds it unnecessary to revisit this issue.

claims is achieved without full litigation on the merits, this court applies a two-part test to determine prevailing party status. First, the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained. Second, the suit must have prompted the defendant to act or cease its behavior; the defendant cannot have acted "wholly gratuitously" in response to the plaintiff's claims. *In re Burlington Northern, Emp. Practices Lit.*, 832 F.2d 422, 425 (7th Cir.1987); *Harrington v. DeVito*, 656 F.2d 264, 266–67 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

*Dixon*, 948 F.2d at 358.

The plaintiffs also cite from this court's March 12, 1994, Memorandum and Order, in which this judge concluded that they were prevailing parties:

> Certainly, based on this sequence of events, the plaintiffs can claim to be a prevailing party with reference to these newly found efforts by Local 472 during the pendency of this case. Additionally, Local 472's efforts are at least a tacit admission of previous non-compliance with the requirements in *Hudson*.

Memorandum and Order at 12, referring to *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). In the same Memorandum and Order, while this court granted partial summary judgment for the defendant, this judge also found that the efforts of the Local 472 were still deficient:

> As the court alluded to above, Local 472 is still remiss based on the requirements of *Hudson*. Notwithstanding the defendants [sic] arguments that the above mentioned procedures brig Local 472 into full compliance with *Hudson* and *Abood*, this court does not agree. The defendants have failed to discuss the requisite procedures wherein "the union must set up an escrow account to hold the fees paid by non-members who have indicated an objection to the amount of the fair share fee." *Ping v. National Educ. Ass'n*, 870 F.2d 1369 (7th Cir.1989) (citing *Hudson*, 475 U.S. at 305 [106 S.Ct. at 1075].) Equally important to this dispute is the requirement that "the

> ... have in place a system whereby any objections to the amount of the fair share fee are adjudicated reasonably expeditiously by an impartial decisionmaker." *Id.* (citing *Hudson*, 475 U.S. at 307 [106 S.Ct. at 1076].) Although the defendant alluded to certain procedures in the February 22, 1993 letter, this court can not grant summary judgment on that basis at this time.

Memorandum and Order at 14. The defendant argues that these plaintiffs have not met the Supreme Court's standard as enunciated in *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992):

> "[T]o be considered a prevailing party within the meaning of § 1988," we held, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." 489 U.S., at 792, 109 S.Ct., at 1493. We reemphasized that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."

*Id.* —— U.S. —— – ——, 113 S.Ct. at 572–73 (quoting *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989)). This "material alteration," as enunciated in *Farrar*, is demonstrated by some showing of relief:

> [A] civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt* [*v. Helms*], *supra*, 482 U.S. [755], at 760, 107 S.Ct. [2672], at 2675 [96 L.Ed.2d 654 (1987)], or comparable relief through a consent decree or settlement, *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. See *Hewitt, supra*, 482 U.S., at 764, 107 S.Ct., at 2677. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff."

*Id.* —— U.S. at ——, 113 S.Ct. at 573. The defendant has attempted to reduce the plaintiffs' efforts in this case to a mere technicality:

When compared to the grandiose claims for relief, the end result of the lawsuit by Croker and Johnson is decidedly insignificant. Though they sought sweeping declarations of unconstitutional conduct by Local 472, an award of damages against the union, and a permanent injunction, Croker and Johnson obtained a declaration that Local 472's accountant failed to properly verify certain expenditures included in the union's fair share fee calculation. In essence, the plaintiffs obtained a declaration that the union hired an incompetent CPA.

Defendant's Brief in Opposition at 7. As discussed *supra,* the plaintiffs aptly note that prior to this lawsuit, the union ignored their invocation of their rights pursuant to *Hudson.* This court found the same, and, regardless of the extent to which it was through a "back and fill" effort or through the mandates of this court, Local 472 is being forced to comply with *Hudson.* This result was the crux of the plaintiffs' lawsuit. Essentially, the union is arguing that because they started to alter their legal relationship with the plaintiffs prior to judgment, there is no palpable result that demonstrates that these plaintiffs have prevailed. It is disingenuous of the defendant to argue that this result does not benefit the plaintiffs, or that its point of commencement alters the premise that this lawsuit is causally related to the outcome. This court is not persuaded that the actions of Local 472 were merely voluntary, gratuitous or in any other way unconnected to litigation in this court. This lawsuit played a "provocative role" in terms of causation. *Shepard v. Sullivan,* 898 F.2d 1267, 1271 (7th Cir.1990) (citation omitted). This court agrees with the plaintiffs' characterization of the circumstances:

> The union had done nothing to comply with *Hudson* before suit was instituted; subsequent to service of the Complaint, the union engaged in a crash course to give the appearance of compliance with *Hudson.* Even so, this court has ruled that it failed to do so, effectively insulating the nonmembers from future collection efforts.

Plaintiffs' Reply at 8. As a matter of law, this court, in its discretion, finds that the plaintiffs are prevailing parties under 42 U.S.C. § 1988.

### B. Entitlement of Prevailing Parties to Fees and Costs

■ The defendant argues that, even if the plaintiffs were prevailing parties, this court should deny the plaintiffs' petition for attorneys' fees and costs. First, the defendant claims the plaintiffs are not entitled under *Farrar* and *Maul v. Constan,* 23 F.3d 143 (7th Cir.1994).

The defendant claims that the determination in this case is so slight that attorneys' fees and costs are not warranted:

> Under the best case scenario for Croker and Johnson, they have obtained a mere determination that the substandard verification by Local 472's auditor infringed their constitutional right to certain procedures prior to payment of their fair share fee to Local 472. Under *Farrar* and *Maul,* such a determination is insufficient to support an attorney award. Therefore, this Court should reject the costs and fee petition of Croker and Johnson.

Defendant's Brief at 8. In *Farrar,* the prevailing party's litigation resulted in the award of $1.00. The Supreme Court found this amount nominal, and while this is not a complete bar to an award of attorneys' fees, in this type of cases, the "only reasonable fee is not fee at all." *Id.* —— U.S. at ——, 113 S.Ct. at 575.

The Seventh Circuit has addressed nominal damages as the basis for denial of petition. In *Cartwright v. Stamper,* 7 F.3d 106 (1993), the court of appeals held that a nominal damages recovery should be the basis for the denial of a petition for fees and costs only if it is *"de minimis."* *Id.* at 109. Judge Cudahy defined this standard in light of *Farrar:*

> In order to determine whether a plaintiff's victory in obtaining nominal damages is *de minimis,* we look at the difference between the judgment recovered and the recovery sought, the significance of the legal issue on which the plaintiff prevailed and, finally, the public purpose served by the litigation.

*Cartwright v. Stamper,* 7 F.3d at 109 (citing *Farrar,* —— U.S. at ——–——, 113 S.Ct. at 578–79. This court does not find that the results achieved in this case constitute a "mere determination." The plaintiffs commenced this litigation because the Local 472's procedures violated their Constitutional rights; they achieved compliance with *Hudson.* Thus, the legal issue on which the plaintiffs prevailed is significant. The public purpose served by this litigation is great; it ensures proper procedure for each future nonmember prior to payment of their fair share fee. It appears to this court that this defendant, once faced with litigation, attempted to backpaddle its way out of liability and is now claiming this court reached a "mere determination." This is not so in the eyes of this judge; this case is not a mere technical victory pursuant to *Farrar* which would warrant a denial of the plaintiffs' petition. And, having found that the recovery in this case is more than *de minimis,* this court notes that the discrepancy between judgment recovered and recovery sought is relevant only as to a determination of reasonable attorneys' fees, analyzed below.

### C. Attorneys' Fees Issue Moot for Lack of Incurred Fees

██ In what initially appears to be the same non-entitlement argument in another guise, the defendant argues that the plaintiffs' petition is rendered moot as plaintiffs have not actually incurred costs or fees. Defendant's Brief at 4. The plaintiffs were represented by Young and Chappell, both of whom work as staff attorneys for the National Right to Work Foundation (NRTWF). As such, the defendant argues, no market rate can be determined, since no opportunity cost was involved. *Id.* at 5.

Local 472 focuses on the fact that neither attorney has rendered legal services outside of the scope of their employment with NRTWF:

Thus, it appears neither Chappell nor Young have a "market rate" as defined in *Barrow.* That is to say, neither Chappell nor Young have foregone attorney time *with a cost* to represent Johnson and Croker in this case. Any time that Young or Chappell would or could have spent in lieu of time spent on this case, would have been devoted to NRTWF work. NRTWF exists "to provide *free* legal assistance to individual employees …" Declaration of Chappell, ¶ 2 (emphasis added).

Defendant's Brief at 5–6. The defendants argue that, given the involvement of the NRTWF and the insignificance of the outcome, this court would "make [NRTWF] the beneficiary of an attorney fee bonanza." *Id.* at 6.

The defendant's argument is completely contrary to the Supreme Court's decision in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Justice Powell, in analyzing "reasonable fees," elaborated on legal organizations' entitlement to attorneys' fees:

It is also clear from the legislative history that Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization. The citations to *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (NDCal.1974) and *Davis v. County of Los Angeles,* 8 EPD ¶ 9444 [1974 WL 180] (CDCal.1974), make this explicit. In *Stanford Daily,* the court held that it "must avoid … decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return." 64 F.R.D., at 681. In *Davis,* the court held:

"In determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel … are employed by … a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorneys' fees." 8 EPD, at 5048–5049.

We cannot assume that Congress would endorse the standards used in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (CA5 1974), *Stanford Daily, Davis,* and *Swann v. Charlotte–Mecklenburg*

*Board of Education,* 66 F.R.D. 483 (WDNC1975) if fee awards based on market rates were viewed as the kind of "windfall profits" it expressly intended to prohibit.

*Blum,* 465 U.S. at 894–95, 104 S.Ct. at 1547. The defendant cites *Barrow v. Falck,* 977 F.2d 1100 (7th Cir.1992), on the calculation of attorneys' fees for public service attorneys:

> A premium rate for civil rights cases, applicable only when the other side is paying, looks like nothing so much as a disguised multiplier. Judges must stick to the market rate for the attorneys' time—that is to say, the opportunity costs of their time, the rate they could receive in other engagements. Unless there is evidence that attorneys receive more per hour, from their own clients, in civil rights litigation than in other kinds of litigation—and this record contains no such evidence—the court must use the hourly rate for the attorney's regular legal services.

*Id.* at 1105. In this case, the defendants argue, there is no opportunity cost because these staff attorneys have never been retained as counsel outside of their employment with NRTWF; hence, "it appears that neither Chappell nor Young have a 'market rate' as defined in *Barrow.*" Defendant's Brief at 5.

This court finds that the defendant's arguments are not supported by case law, and a more detailed analysis of this claim would be unfruitful. Thus, the issue is now narrowed, not to whether the plaintiffs are entitled to attorney's fees, but rather a calculation of the reasonable amount.

## D. Reasonable Attorney's Fees

■ Having found the plaintiffs prevailing parties, this judge must determine the reasonable attorney's fees. This decision is entrusted to the court's sound discretion. *Bovey v. City of Lafayette, Ind.,* 638 F.Supp. 640 (N.D.Ind.1986) (citing *Berberena v. Coler,* 753 F.2d 629, 632 (7th Cir.1985)).

■ As established above, this court finds that the plaintiffs prevailed in the sense that they achieved at least part of their desired result through litigation. It is up to this court to determine by what, if any, percentage, the fees should be reduced in relation to the success of this civil rights lawsuit. It is well established that an attorney "who prevails only in part is not entitled to compensation for all hours expended in the litigation." *Bohen v. City of East Chicago,* 666 F.Supp. 154, 156 (N.D.Ind.1987) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

■ As an initial matter, this court addresses the plaintiffs' request that the court draw upon its own knowledge of the market rate in Lafayette. Fortuitously, this source of knowledge does not need to be tapped, as the reasonability of fees is a much explored topic in the Seventh Circuit. Seven years ago, Judge Easterbrook, sitting by designation on the district court, found a one hundred dollar per hour fee reasonable:

> But I am familiar with the market for legal services in Northern Indiana and believe that $100 per hour for the quality of service rendered in this case is a reasonable rate ... The current request, modest beside the rates of senior associates at large law firms, is similarly appropriate.

*Bohen v. City of East Chicago,* 666 F.Supp. 154 (N.D.Ind.1987) (Judge Easterbrook sitting by designation). It is also well established that this judge need not limit the hourly rates to the Lafayette area. Judge Fairchild, in *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982), affirmed Judge Grant's conclusion in the Northern District of Indiana, *Chrapliwy v. Uniroyal, Inc.,* 509 F.Supp. 442 (N.D.Ind.1981):

> If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service. On the other hand, there are undoubtedly services which a local attorney may not be willing or able to perform. The complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally.

*Id.* at 768.

■ Aside from these considerations, the determination of a reasonable rate in fee-

shifting cases such as this takes place against the backdrop of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A "lodestar" must be determined, as defined in *Hensley:*

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Id.* at 433, 103 S.Ct. at 1939. This case also requires that district courts "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 434, 103 S.Ct. at 1939.

The plaintiffs have submitted the hours and costs for all aspects of this litigation, as well as the basis for their argument that the charges are reasonable:

> Plaintiffs submit that: (1) the standard hourly rate in the Indianapolis/Lafayette area for attorneys with the qualifications of W. James Young is between $105.00–$130.00 per hour; (2) the standard hourly rate in the Indianapolis/Lafayette area for attorneys with the qualifications of Milton L. Chappell is $150.00–$175.00 per hour; and the standard hourly rate in the Lafayette/Logansport area for attorneys with the qualifications of Mr. Damm is $75.00 per hour, and additionally, that his normal hourly billing rate is also $75.00 per hour. Attorney William R. Riggs of Indianapolis submits a Declaration (Exhibit 4) attesting that the rates claimed by attorneys Young, Chappell, and Damm are reasonable and in accord with the prevailing rates in the Indianapolis area, given their experience and the quality of the work performed.

Plaintiffs' Petition at 5 (Attorneys' Fees Report attached as Appendix A). The court notes that Local 472 has not objected to the plaintiffs' expended hours as unreasonable, nor to expenses, travel, and Westlaw research. Plaintiffs' Reply at 5. As discussed *supra,* Judge Easterbrook found $100 reasonable in 1987, and this court has awarded fees at this rate for similar services. Thus, this court finds the charges reasonable, and finds the starting point is each attorney's rate times the hours reported. The plaintiffs calculate this amount at $40,063.50.

Further, the plaintiffs claim costs and expenses in the amount of $4,065.78: $3,159.77 in travel costs, $847.25 in district court filing fees, witness and mileage fees, and deposition and transcript costs, and $58.76 in Westlaw research costs. The defendants did object to the award of expert witness fees; the plaintiffs' accounting does not reflect any such charge.

The defendants have, as discussed *supra,* disingenuously argued that these plaintiffs have not prevailed. In an objective light, these nonmembers commenced litigation because Local 472 was not complying with accounting methods outlined in *Hudson.* The upshot of this lawsuit has been compliance with *Hudson.* The defendant argues that the plaintiffs did not receive all the relief they requested; the plaintiffs were denied a permanent injunction and an award of damages. While an argument can be made that once Local 472 is in compliance, an injunction is no longer required, this court does find the lack of damages award significant. However, this is not a case where the issues pursued and achieved are separable; all of the claims were inextricably linked. To put it another way: these plaintiffs prevailed on a significant issue, but a "reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. In balancing the total circumstances of this case, this court finds the plaintiffs prevailed to seventy-five percent of their intended efforts in this litigation.

## III. Conclusion

This court finds the nonmember plaintiffs prevailing and their hours reasonably expended. Thus, the court awards plaintiffs' reasonable fees in the amount of $40,063.50.

The court also awards $4,065.78 in costs and expenses. This total of $44,129.28 is reduced by twenty-five percent for the limited success to $33,096.96.

|   | ATTORNEY | YEAR | TIME CLAIMED[2] | LODESTAR AMOUNT | TOTAL FEES CLAIMED |
|---|----------|------|-----------------|-----------------|--------------------|
| A) | W. James Young | 1992 | 37.20 | $105.00 | $ 3,886.00 |
|   |   | 1993–94 | 216.35 | $120.00 | $25,962.00 |
| B) | John S. Damm | 1992–93 | 45.25 | $75.00 | $ 4,537.50 |
| C) | James Muehlhausen | 1992 | 0.4 | $85.00 | $ 34.00 |
| D) | Milton L. Chappell | 1993 | 33.20 | $170.00 | $ 5,644.00 |
|   | TOTAL |   | 332.40 |   | $40,063.50[3] |

ITEMIZED EXPENSE REPORT
FOR CASE: JOHNSON V. LO 472 LAFAYETTE FF/IAFF
ATTORNEY: YOUNG TE#: 2150 INDIANA

| DATE | PAYEE | TYPE | DESCRIPTION | AMOUNT | WESTLAW |
|------|-------|------|-------------|--------|---------|
| 7/31/92 | CLERK U.S. DIST. CT. | FF | FILING FEE—COMPLAINT | 120.00 | 0.00 |
| 2/28/93 | WEST PUBLISHING | W | WESTLAW CHARGES FOR FEBRUARY | 0.00 | 58.76 |
| 2/28/93 | CLERK U.S.DIST.CT. | FF | ADMISSION FEE FOR W.J. YOUNG | 30.00 | 0.00 |
| 3/31/93 | W. JAMES YOUNG | ATR | TRIP TO INDIANAPOLIS 2/24/93 | 705.78 | 0.00 |
| 3/31/93 | ANDREA HEADLEY | AO | TRANSPORT WJY/TO NATIONAL AIRP | 8.40 | 0.00 |
| 4/15/93 | ROSS, LANGAN & MCKENDREE | ECF | EXPERT CONSULTANT (CPA) FEE | 1575.00 | 0.00 |
| 10/06/93 | RONALD P. AUSTIN | WFM | WITNESS FEES & MILEAGE—DEPO | 60.00 | 0.00 |
| 10/13/93 | SHERIFF/TIPPECANOE COUNTY, IND | WFS | SERVICE OF SUBPOENA ON AUSTIN | 14.00 | 0.00 |
| 10/22/93 | W. JAMES YOUNG | ATR | TRIP TO IND/LAFAY 10/24–25/93 | 1521.91 | 0.00 |
| 10/27/93 | GAIL MALM ARMSTRONG | TD | DEPO—RONALD AUSTIN, 10/25/93 | 210.25 | 0.00 |
| 11/05/93 | RONALD P. AUSTIN | WFM | WITNESS & MILEAGE FEE—TRIAL | 45.00 | 0.00 |
| 11/05/93 | ROSS, LANGAN & MCKENDREE | ECF | ATTEND DEPO OF RONALD AUSTIN | 2160.00 | 0.00 |
| 11/05/93 | ROSS, LANGAN & MCKENDREE | ECE | EXPENSES INCURRED/AUSTIN DEPO | 25.00 | 0.00 |
| 11/15/93 | W. JAMES YOUNG | ATR | TRIP IND/LAFAYETTE 11/14–15/93 | 954.39 | 0.00 |
| 11/16/93 | TAMARA VANDERVORT | TH | TRIAL TRANSCRIPT | 368.00 | 0.00 |
| 12/12/93 | MILTON CHAPPELL | ATR | TRIP/INDIANA (11/14–15/93) | 405.98 | 0.00 |
| 12/17/93 | ROSS, LANGAN & MCKENDREE | ECF | TRIAL TESTIMONY | 3008.00 | 0.00 |
| 12/17/93 | ROSS, LANGAN & MCKENDREE | ECE | EXPENSE OF TRIAL | 25.00 | 0.00 |
| 02/25/94 | W. JAMES YOUNG | ATR | TRAVEL TO INDIANA 2/25–2/27 | 324.27 | 0.00 |

Total for case JOHNSON.............. 11560.98 58.76