**David CADY, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, David R. Mosena,[1] in his official capacity as Commissioner of the Department of Aviation of the City of Chicago, Archdiocese of Chicago, and Father John J. Jamnicky, Defendants–Appellees.**

No. 93–3280.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1994.

Decided Dec. 28, 1994.

1. David R. Mosena is substituted for his predecessor, Jay R. Franke, as the Commissioner of the Department of Aviation of the City of Chicago. Fed.R.App.P. 43(c)(1).

Mary L. Boelcke; Michael Null, Reed Lee, and Deidre Baumann (argued), Null & Associates, Chicago, IL, for plaintiff-appellant.

Lawrence Rosenthal, Deputy Corp. Counsel, Kelly R. Welsh, ACC, Asst. Corp. Counsel, Mary F. Harkenrider, Benna R. Solomon, Anita K. Modak–Truran, Julian Henriques (argued), Susan S. Sher, Office of the Corp. Counsel, Appeals Div.; and James A. Serritella, Edward X. Clinton and James C. Geoly (argued), Mayer, Brown & Platt, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

David Cady brought an action under 42 U.S.C. § 1983 against the City of Chicago, the commissioner of the City's Department of Aviation, the Archdiocese of Chicago and the chaplain of the O'Hare Airport Chapel, Reverend John J. Jamnicky, for violations of his First and Fourteenth Amendment rights. He alleged that the defendants imposed unconstitutional prior restraints on his access to a public forum, a literature rack located outside the O'Hare Airport Chapel. While the suit was pending, the City of Chicago voluntarily removed the literature rack, a step which led the district court to dismiss the suit as moot on the City's motion. Cady then petitioned for $17,965 in attorney's fees pursuant to 42 U.S.C. § 1988. The district court denied Cady's request for the award of fees, finding that Cady was not a "prevailing party" within the meaning of § 1988. 855 F.Supp. 922. Cady appeals, and we affirm.

## I.

The City of Chicago maintained a literature rack at the O'Hare International Airport for the display and gratuitous dissemination of religious literature. The rack was located immediately outside the airport's chapel. Cady wished to display certain religious literature on the rack, but was informed by Father Jamnicky that Jamnicky would have to examine the literature first to determine whether it was appropriate for display on the rack. Jamnicky explained that he approved all items except those that disparaged other religions. Cady then telephoned the City's Department of Aviation and spoke to a deputy commissioner, who confirmed that the chaplain's prior approval was required before any religious literature could be displayed on the rack. Although the airport's chapel was nondenominational, Father Jamnicky, who was employed by the Archdiocese of Chicago, was the only chaplain who served there.

Refusing to submit his religious literature (which contained material critical of Roman Catholicism) for Jamnicky's review, Cady brought suit to challenge "the requirement for prior review and approval." He alleged that the requirement violated the Free Speech, Free Exercise, and Establishment Clauses of the First Amendment and the corresponding provisions of the Illinois Constitution. He sought a declaration that the defendants' practice concerning the literature rack "amount[ed] to an unconstitutional prior restraint and content-based censorship of religious literature." He also sought to enjoin the defendants from insisting upon prior review of his religious literature.

Two months after Cady initiated the action, the City moved to dismiss the action on mootness grounds, stating that the City's Department of Aviation had "permanently removed the literature rack at issue." Cady

did not oppose this motion, and the action was dismissed as moot. Thereafter, Cady petitioned for an award of attorney's fees. The district court denied the petition, finding that Cady was not a "prevailing party" within the meaning of § 1988. The court reasoned that Cady did not obtain what his lawsuit had set out to accomplish, which was "to get an uncensored forum for distribution of his own religious literature." 855 F.Supp. at 923–24. It found that Cady had "derived no benefit from this action, except perhaps the purely psychic satisfaction of having forced defendants to understand that their prior practice had violated the Constitution and therefore [had] to be abandoned." *Id.* at 924. The court acknowledged, however, that but for Cady's lawsuit the defendants would not have removed the rack. *Id.* at 923. It also noted that the defendants had suffered a detriment by changing their prelitigation course of conduct. *Id.* Cady appeals, contending that the City's removal of the rack sufficed to render him a "prevailing party."

## II.

■ 42 U.S.C. § 1988 provides that in federal civil rights actions, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." To qualify as a "prevailing party," a plaintiff must succeed on a significant issue in litigation " 'which achieves some of the benefit [he] sought in bringing suit.' " *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)); *see also Dixon v. City of Chicago,* 948 F.2d 355, 358 (7th Cir.1991). The outcome of the suit "will constitute relief, for purposes of § 1988,

if, and only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 203, 102 L.Ed.2d 1 (1988) (per curiam). A plaintiff need not litigate the suit to judgment but can "prevail" if the litigation causes the defendant to act voluntarily in a way that "affords the plaintiff all or some of the relief he sought through a judgment—*e.g.,* a monetary settlement or a change in conduct that redresses the plaintiff's grievances." *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) (citing *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980)); *Zinn v. Shalala,* 35 F.3d 273, 274 (7th Cir.1994). In short:

> [A] plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Farrar,* —— U.S. at ——, 113 S.Ct. at 573.[2]

■ Where the relief obtained is through the defendant's voluntary change of conduct, this court has required the plaintiff to first show that his lawsuit was "causally linked to the achievement of the relief obtained." *Zinn,* 35 F.3d at 274 (citations and internal quotation marks omitted); *Dixon,* 948 F.2d at 358. This requires the plaintiff to meet more than just a "but for" test; the plaintiff's lawsuit must have been a cause, "in the same sense in which we speak of 'cause' in tort and criminal law, of the attaining of his objective in bringing the suit." *Brown v. Griggsville Community Unit School Dist. No. 4,* 12 F.3d 681, 685 (7th Cir.1993). In addition, the defendant must not have acted "wholly gratuitously" in response to the suit; *i.e.,* the plaintiff's claim must not have been frivolous,

2. In *Farrar,* the Supreme Court appeared to suggest in dictum that in order to qualify as a prevailing party, a plaintiff must show not only that the lawsuit was the catalyst of legal change favorable to the plaintiff, but also that he obtained the relief through a judgment or settlement. *See Brown v. Griggsville Community Sch. Dist. No. 4,* 12 F.3d 681, 684 (7th Cir.1993). The Court stated that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar,* —— U.S. at ——, 113 S.Ct. at 574. The Fourth Circuit has interpreted

the Court's language to mean that a voluntary change in the defendant's behavior cannot suffice to confer prevailing party status. *S–1 v. State Bd. of Educ. of N. Carolina,* 21 F.3d 49 (4th Cir.) (en banc) (per curiam), *cert. denied,* —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). This court, however, has rejected that reading and, consistent with the Third, Fifth, Eighth and Tenth Circuits, has held that *"Farrar* does not preclude the award of fees when plaintiffs attain the relief they seek through defendants' voluntary action." *Zinn v. Shalala,* 35 F.3d 273, 276 (7th Cir.1994).

unreasonable or groundless. *Zinn*, 35 F.3d at 274; *Dixon*, 948 F.2d at 358; *see also Palmer v. City of Chicago*, 806 F.2d 1316, 1323 (7th Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987).

■ The key inquiry in this case is whether Cady attained his objective in bringing the suit, or stated differently, whether the City's voluntary removal of the rack redressed Cady's grievances and directly benefitted him. This is a factual determination which we review only for clear error. *Dixon*, 948 F.2d at 358; *Gekas v. Attorney Registration & Disciplinary Comm'n*, 793 F.2d 846, 850 (7th Cir.1986) (per curiam). It is useful to look to the relief requested in Cady's complaint as a starting point. *See Christopher P. v. Marcus*, 915 F.2d 794, 804 (2d Cir.1990), *cert. denied*, 498 U.S. 1123, 111 S.Ct. 1081, 112 L.Ed.2d 1186 (1991); *Institutionalized Juveniles v. Secretary of Pub. Welfare*, 758 F.2d 897, 911 (3rd Cir.1985). Cady sought a declaration that the manner in which defendants regulated access to the literature rack "amount[ed] to an unconstitutional prior restraint and content-based censorship of the rights to freedom of religion and expression as guaranteed to Cady and others by the first and fourteenth amendments." He also asked the court to "[t]emporarily and permanently enjoin the Defendants from refusing to permit Cady a) to display religious literature on the O'Hare Chapel literature rack or shelf and b) to gratuitously distribute such literature therefrom, without insisting upon prior review or approval of that literature under the Defendants' current custom or policy."

A fair inference from the complaint is that Cady wanted unfettered use of the literature rack. This interpretation is consistent with Cady's allegation that he was "suffering irreparable harm because he [was] unable to express himself and to exercise his religious beliefs" and that his "opportunities for speech and religious exercise [would] be irretrievably lost until the Defendants change[d] their policy." Thus, the district court did not clearly err in finding that Cady's goal was to obtain "the ability to exercise his own First Amendment rights—to get an uncensored forum for distribution of his own religious literature." 855 F.Supp. at 923–24. Because the City has removed the forum to which Cady sought access, Cady's grievances were not redressed by the City's voluntary measure—he still has no access to the rack in order to exercise his First Amendment rights. Thus, Cady's situation is unlike those cases where the plaintiffs became "prevailing parties" when the defendants, either unilaterally or via settlement, ceased the precise conduct that the plaintiffs sought to enjoin. *See, e.g., Foremaster v. City of St. George*, 882 F.2d 1485 (10th Cir.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990); *Gekas*, 793 F.2d 846; *Lovell v. City of Kankakee*, 783 F.2d 95 (7th Cir.1986).

Of course, to have prevailed for purposes of section 1988, a party " 'need not obtain relief identical to the relief [that it] specifically demanded, as long as the relief obtained is of the same general type,' " *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1583 (11th Cir.1994) (quoting *Ashley v. Atlantic Richfield Co.*, 794 F.2d 128, 131 (3rd Cir. 1986)), as when the result of the litigation shifts the status quo toward that which the plaintiff hoped to obtain. *See id.* (where plaintiffs sought to eliminate all race and gender-conscious affirmative action provisions in consent decrees, they obtained cognizable relief of the same general type when the result of the litigation restricted the scope and duration of the affirmative action provisions of the decrees); *see also Fast v. School Dist. of City of Ladue*, 728 F.2d 1030, 1033–34 (8th Cir.1984) (en banc) (plaintiff was a prevailing party when she obtained a post-lay-off hearing, even though she had requested a pre-lay-off hearing in her complaint). Still, before he may be deemed a prevailing party, Cady must show that the defendants' voluntary change in conduct in some way redressed his grievances and directly benefitted him. *Hewitt*, 482 U.S. at 760–61, 107 S.Ct. at 2675–76; *see also Farrar*, —— U.S. at ——, 113 S.Ct. at 573. In Cady's case, however, the City's change of conduct seems to have departed from what Cady had requested: Cady wanted access to the rack, but the City's action closed that forum to Cady as well as everyone else.

Cady argues nonetheless that the relief he expressly asked for in his complaint reflected only a portion of his challenge to the defendants' alleged failure to provide substantive and procedural standards for the use of the rack. He claims that his "primary purpose" in bringing the action was to stop the defendants from "continuing to engage in invidious discrimination" (Opening Br. at 9) and that in the final analysis, he wanted the defendants to cease their unconstitutional practice of "convey[ing] unbridled discretion upon one person" (Reply Br. at 7). Because the removal of the rack "curbed the unbridled discretion of Defendant Jamnicky" (Reply Br. at 1–2, 7) and prevented him from engaging in content-based discrimination, Cady's argument continues, he has achieved his goal in bringing the lawsuit, rendering him a prevailing party.

■ Aside from the fact that Cady's argument appears to be a post-hoc attempt to recharacterize his claims, we note that "moral satisfaction" alone does not bestow "prevailing party" status on a plaintiff. See Farrar, — U.S. at — – —, 113 S.Ct. at 573–74; Hewitt, 482 U.S. at 762, 107 S.Ct. at 2676. The plaintiff must be able to point to a " 'material alteration of the legal relationship of the parties,' " Farrar, — U.S. at —, 113 S.Ct. at 573 (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989))—and "no material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant" (id. — U.S. at —, 113 S.Ct. at 574)—or success in modifying the defendant's behavior to the plaintiff's direct advantage, see Zinn, 35 F.3d at 274. Thus, where a plaintiff obtains a declaratory judgment but is not benefitted by any change of the defendant's behavior to-

ward him, he normally does not qualify as a prevailing party. See Farrar, — U.S. at — – —, 113 S.Ct. at 573–74; see also, e.g., Rhodes, 488 U.S. at 4, 109 S.Ct. at 203 (reversing award of attorney's fees premised solely on a declaratory judgment that prison officials had violated the plaintiffs' constitutional rights where one of the plaintiffs had died and the other was no longer in custody; reasoning that whatever "modification of prison policies" the declaratory judgment might have effected could not in any way have benefitted either plaintiff); see also Martinez v. Wilson, 32 F.3d 1415, 1422 (9th Cir.1994) (where plaintiffs' injunctive relief vindicated only a "generalized interest in having the government obey the law" and plaintiffs "derived no direct benefit," they were not "prevailing parties"). Thus, unless Cady can point to a direct benefit or redressed grievance other than the "psychic satisfaction" of ending "invidious discrimination," he does not emerge as a prevailing party.[3]

It is true that Cady's case ended soon after the complaint was filed and before any chance for amendment or modification of legal positions. Had the case progressed to final judgment, of course, Cady could have obtained any relief to which he was entitled even if the relief had not been requested in the complaint. Fed.R.Civ.P. 54(c). In that sense, holding Cady to the relief demanded in his complaint might seem inconsistent with the liberal federal notice pleading rules. See Fast, 728 F.2d at 1033; see generally Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Even so, when litigation terminates at its inception, as it did here, a district court asked to award fees must still make some pragmatic assessment of the goals the plaintiff had in mind in bringing suit and the

---

**3.** If the City had been using public funds to subsidize a particular religion to the exclusion of others, then perhaps the elimination of the rack would have, at a minimum, benefitted Cady as a taxpayer. See Foremaster, 882 F.2d at 1488 (plaintiff, who challenged constitutionality of the city's utility subsidy to a local Mormon temple, was a prevailing party when the city mooted the case by voluntarily terminating the subsidy); cf. Flast v. Cohen, 392 U.S. 83, 103–06, 88 S.Ct.

1942, 1954–56, 20 L.Ed.2d 947 (1968). Yet, the benefit that the plaintiff achieves must at least have been consistent with his objective in bringing the suit. See Hunger v. Leininger, 15 F.3d 664, 670 (7th Cir.), cert. denied, — U.S. —, 115 S.Ct. 123, 130 L.Ed.2d 67 (1994), and cases cited at page 329, supra. Neither the relief Cady requested in his complaint nor his arguments before us give such indication.

extent to which the plaintiff achieved those ends. *Bonnes v. Long,* 599 F.2d 1316, 1319 (4th Cir.1979), *overruled on other grounds, S–1 v. State Bd. of Educ. of N. Carolina,* 21 F.3d 49, 51 (4th Cir.) (en banc) (per curiam), *cert. denied,* —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). The complaint, of which the plaintiff is of course the master, is one measure of his success, if not the only one. Where, as here, the complaint evinces a single objective that was not furthered by the resolution of the suit, it would be anomalous to permit the plaintiff to recast his claim once the outcome is known in order to assume the appearance of a victor.

In any case, when the City moved to dismiss the case, Cady did nothing to signal that his goal was broader than his complaint otherwise suggested and, in particular, that removal of the rack was among the alternatives that would serve his ends. We note that to the extent Cady really did have an interest in removal of the literature rack, the City's unilateral decision to eliminate the rack did not necessarily render the case moot. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *Kikumura v. Turner,* 28 F.3d 592, 597 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1317, —— L.Ed.2d —— (1995). Our precedents suggest that Cady remained free to seek an injunction forbidding the City from re-installing the rack at a later date, *see Dombeck v. Milwaukee Valve Co.,* 40 F.3d 230, 237–38 (7th Cir.1994); *M–F–G Corp. v. EMRA Corp.,* 817 F.2d 410, 411 (7th Cir. 1987); alternatively, Cady might have requested an order allowing him access to the rack in the event it were put up again. Relief along these lines might have lent support to an argument that Cady had achieved concrete redress for his grievance. We do not wish to place too much weight on Cady's decision not to seek such an injunction—the City, after all, did represent to the district court that the rack had been removed for good, and Cady (not unreasonably) thought the Corporation Counsel's word enough on that point. But a letter, even a formal settlement agreement, is not by itself enforceable in contempt, *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 460–61 (7th Cir.1993), and

the lack of an injunction that Cady could enforce against the City simply confirms that the outcome of the suit did not alter the legal relationship between the parties or in some other way concretely benefit Cady. *Cf. Hewitt,* 482 U.S. at 760, 107 S.Ct. at 2675 (stating that even if plaintiff's nonmonetary claims were not moot as a result of his release from prison and were kept alive by his interest in expungement of a misconduct conviction from his prison record, the fact that plaintiff never took the steps necessary to have a declaratory judgment or expungement order properly entered disqualified him as a prevailing party).

### III.

Although "the prevailing party inquiry does not turn on the magnitude of the relief obtained," and " 'the degree of the plaintiff's success' does not affect 'eligibility for a fee award,' " *Farrar,* —— U.S. at ——, 113 S.Ct. at 574, a plaintiff must first "cross[ ] the 'statutory threshold' of prevailing party status." *Texas State Teachers Ass'n,* 489 U.S. at 789, 109 S.Ct. at 1492. The district court, having presided over the litigation (however short-lived it may have been), was in the best position to make this assessment. *See generally Munson v. Milwaukee Bd. of Sch. Directors,* 969 F.2d 266, 269 (7th Cir.1992) (emphasizing deference owed to district court's fee determinations). In light of our discussion above, we discern no clear error in the district court's finding that Cady was not a prevailing party for purposes of section 1988.

We acknowledge that to routinely permit public officials who may have violated a plaintiff's constitutional rights to avoid payment of fees simply by unilaterally mooting the case might defeat section 1988's purpose of "ensur[ing] 'effective access to the judicial process' for persons with civil rights grievances." *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937 (quoting H.R.Rep. No. 94–1558, 1 (1976)). Yet, "the focus of [the prevailing party] analysis is on the relief actually obtained." *Institutionalized Juveniles,* 758 F.2d at 911; *see also Doe v. Busbee,* 684 F.2d 1375, 1379 (11th Cir.1982). We do not wish to in any way discount the import of what Cady's suit achieved. As the district court observed, Cady's decision to file suit prompt-

ed the City to end a practice with serious constitutional flaws. 855 F.Supp. at 923–24. At the same time, a fair assessment of Cady's complaint tends to suggest that Cady attained none of the relief he actually sought. For that reason, we do not think the district court was compelled to deem Cady a prevailing party entitled to fees.

AFFIRMED.