James Eric **JOHNSON** and Jerry M. Croker, **Plaintiffs–Appellees,**

v.

**LAFAYETTE FIRE FIGHTERS ASSOCIATION LOCAL 472, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL–CIO–CLC, Defendant–Appellant.**

No. 94–3012.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1995.

Decided April 5, 1995.

Milton L. Chappell, W. James Young (argued), National Right To Work Legal Defense Foundation, Springfield, VA, John S. Damm, Miller, Tolbert, Muehlhausen, Muehlhausen & Groff, Logansport, IN, for James E. Johnson and Jerry M. Croker.

John C. Ruckelshaus, David T. Hasbrook (argued), Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, IN, for Lafayette Fire Fighters' Ass'n, Local 472, International Ass'n of Firefighters, AFL–CIO–CLC.

Thomas A. Woodley, Erick J. Genser, Mark F. Wilson, Mulholland & Hickey, Washington, DC, for International Ass'n of Fire Fighters, AFL–CIO, CLC, amicus curiae.

Before POSNER, Chief Circuit Judge, ROVNER, Circuit Judge, and MORAN, Chief District Judge.[1]

MORAN, Chief District Judge.

Appellant Lafayette Firefighters' Association Local 472 (the Union) appeals the award of attorney's fees to appellees James Johnson and Jerry Croker (collectively "plaintiffs"), non-union members of the City of Lafayette fire department, under 42 U.S.C. § 1988. The Union argues that plaintiffs' fee petition was untimely under Federal Rule of Civil Procedure 54(d), that plaintiffs are not prevailing parties for the purposes of § 1988, that the award of fees in this case was unreasonable, and that because plaintiffs received legal representation from a charitable legal assistance foundation they did not incur "costs" as the term is used in § 1988. We affirm.

*I.*

The City of Lafayette and the Union have negotiated a series of collective bargaining agreements that contain a provision granting the Union the right to collect fair share or agency shop fees from non-union firefighters. In 1986 Johnson wrote the Union informing it of what he believed to be a fair amount for him to pay for his fair share fee. The Union did not respond until it sent letters to Johnson and Croker in 1992 notifying them of their failure to pay the fair share amount in the collective bargaining agreement and threatening them with further action if they failed to pay what was due.

Soon thereafter Johnson and Croker retained the National Right To Work Legal Defense Fund (NRTWF) and filed a complaint in the Northern District of Indiana under 42 U.S.C. § 1983, alleging that the fair share provision of the collective bargaining agreement violated their First, Fifth, and Fourteenth Amendment rights by failing to provide the procedural protections set out in the Supreme Court's decision in *Teachers' Local Number 1 v. Hudson*, 475 U.S. 292,

---

1. The Honorable James B. Moran, Chief Judge of the Northern District of Illinois, is sitting by designation.

106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).[2] The complaint sought a declaratory judgment that the fair share agreement violated the Constitution; a permanent injunction preventing the Union from enforcing the fair share provision of the collective bargaining agreement; and nominal damages stemming from the Union's demand that plaintiffs comply with the fair share provision.

The parties filed cross-motions for summary judgment. In ruling on the motions the district court held that "[w]hen the complaint was filed ... it was readily apparent that Local 472 was not in compliance with [*Hudson*]. It is also apparent that since the filing of this complaint, Local 472 has been engaged in an effort to back and fill with reference to these requirements." The Union's "back and fill" efforts included sending letters to plaintiffs—while the parties were in the process of briefing the pending motions—detailing the Union's expenses for the period in question. The court then found that this correspondence satisfied the Union's financial disclosure obligation under *Hudson* and, accordingly, granted partial summary judgment in favor of the Union. The court noted that it was plaintiffs' obligation to object to the Union's calculations to effectuate the rest of *Hudson*'s requirements.

Complaining that they were "sandbagged" by the Union's eleventh-hour disclosure, plaintiffs sought an opportunity to show the court that the Union's correspondence did not meet *Hudson*'s financial disclosure requirements. The district court held an evidentiary hearing under Fed.R.Civ.P. 43 and concluded that the Union did not comply with *Hudson*'s requirement of an independent audit. The court set aside its prior grant of summary judgment for the Union and entered judgment for plaintiffs on December 14, 1993. The Union filed a motion for re-

consideration, which the court denied on February 28, 1994. The court then denied plaintiffs' prayer for a permanent injunction and for nominal damages.

On April 8, 1994, plaintiffs petitioned for costs and attorneys' fees. The Union filed an objection alleging that the petition was untimely under the federal rule, 54(d)(2)(B), because it requires fee petitions to be filed within 14 days of judgment. The district court rejected that argument, relying on a local rule in the Northern District of Indiana which grants 90 days to file such petitions, and granted the fee petition in part on July 22, 1994. The court accepted the hourly rate and hours spent submitted by plaintiffs, but reduced the award by 25% in light of plaintiffs' partial success in the case, yielding a total award of $33,096.96.

The Union is now appealing the fee award but not the underlying *Hudson* decision. The International Association of Firefighters, AFL–CIO–CLC, has filed an *amicus curiae* brief in support of Local 472.

## II.

### A. Timeliness Of the Fee Petition

■ The 1993 Amendments to Fed. R.Civ.P. 54(d), which governs the awarding of attorneys' fees, state:[3]

Unless otherwise provided by statute or an order of the court, the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.

Fed.R.Civ.P. 54(d)(2)(B). Plaintiffs filed their fee petition on April 8, 1994—39 days after the district court denied the Union's motion for reconsideration,[4] and clearly more

2. In *Hudson* the Court held that a municipal or state employer's collective bargaining agreement must contain basic procedural safeguards for the payment of fair share fees, including "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision-maker, and an escrow account for the amounts reasonably in dispute while such challenges are pending." *Id.* at 310, 106 S.Ct. at 1078.

3. The amendments became effective December 1, 1993, and therefore were in effect at the time judgment was entered in this case.

4. There appears to be some dispute regarding what date started the clock for the limitations period. Plaintiffs claim that February 28, 1994, the day the Union's motion for reconsideration was denied, is the proper date, while the Union claims that December 14, 1993, the day judg-

than the 14 days provided in the federal rule. The court found that plaintiffs' petition was not time-barred by relying on Northern District of Indiana Local Rule 54.1, which states:

> Except as otherwise provided by statute, rule, or court order, the parties shall have ninety (90) days from the entry of a final judgment against a party to file requests for the taxation of costs and for assessment of attorney fees. This time may be extended by the court for good cause shown. Failure to file such requests or to obtain leave of court for extensions of time within which to file shall be deemed a waiver of the right to make such requests.

The Union argues that since a local rule may not conflict with the applicable federal rule, *see* Fed.R.Civ.P. 83; 28 U.S.C. § 2071; *Colgrove v. Battin,* 413 U.S. 149, 161, 93 S.Ct. 2448, 2455, 37 L.Ed.2d 522 (1973), Local Rule 54.1 is invalid. Plaintiffs argue that the federal rule and the local rule do not conflict because Local Rule 54.1 is "an order of the court" and thus qualifies as an exception to the limitations period in Fed.R.Civ.P. 54(d)(2)(B).[5] This issue is one of first impression.[6]

We agree with plaintiffs that a local rule is an order of the court, at least for the purposes of Fed.R.Civ.P. 54(d)(2)(B). Local rules are adopted by the majority of the judges in a district to govern the practice and procedure of litigation in that district. As such, local rules are, in effect, "standing orders," such that Local Rule 54.1 should be viewed as an order of the court of the Northern District of Indiana.[7] And while these standing orders generally cannot conflict with the Federal Rules of Civil Procedure, the Supreme Court and Congress have frequently used the federal rules to adopt default rules of procedure that are modifiable by the districts through the adoption of local rules. *See, e.g.,* Fed.R.Civ.P. 26(a)(1). We believe that the 14–day filing period contained in Fed.R.Civ.P. 54(d)(2)(B) is one such default rule and that the districts are free to modify the filing period through local rules.

That our reading of Fed.R.Civ.P. 54(d)(2)(B) is the most logical reading of the rule, is made apparent after considering the prior law. Before the enactment of the 1993 Amendments, districts were free to adopt local rules to govern the filing of fee petitions. *See White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). After *White,* many districts adopted local rules to govern the filing of fee petitions. *See e.g.,* Southern District of Georgia Local Rule 11.2(b). If the Supreme Court and Congress had wanted to preempt these local rules they would have done so in definite terms that would not place practitioners in the difficult position of guessing what time period governed the filing of fee petitions. But Fed. R.Civ.P. 54(d)(2)(B) does not contain clear language stripping districts of their power to promulgate local rules to govern the filing of fee petitions. Rather, the rule contains the ambiguous phrase "order of the court," which we do not believe evidences the intent of the Supreme Court and of Congress to so fundamentally change the law in this area.[8]

---

ment was entered against it, is the proper date. The Union failed to argue in the district court that December 14, 1993 is the controlling date and consequently has waived that argument. Therefore, we will treat February 28, 1994 as the controlling date.

**5.** The first phrase in Federal Rule 54(d)(2)(B) reads "[u]nless otherwise provided by statute or an order of the court."

**6.** In addition to the absence of any case interpreting Rule 54(d)(2)(B), the parties have not cited, nor have we found, any case addressing whether a local rule is properly considered an order of the court in any other context.

**7.** Any doubt that local rules are intended by the judges in a district to be standing orders is re-

moved by the timing of the local rule at issue here. Local Rule 54.1 was adopted after the enactment of the 1993 Amendments to the federal rules. It cannot be seriously contended that the judges in the Northern District of Indiana were unaware of the changes in the rules of civil procedure contained in the amendments. It is quite clear that these judges intended to issue a standing order through rule 54.1 to extend the time to file fee petitions in their district to 90 days.

**8.** We are mindful that the relationship between local directives, whether by rule, standing order or otherwise, and the Federal Rules of Civil Procedure, has been troublesome. That troublesome relationship, and the opportunity for conflict, was the focus of the Committee on Rules of

Therefore, we hold that Local Rule 54.1 is an order of the court for the purposes of Fed.R.Civ.P. 54(d)(2)(B), and since plaintiffs' petition was filed within 90 days of judgment, the district court properly considered it timely.

## B. *"Prevailing Party" Status*

■ The Union argues that even if the fee petition was timely, plaintiffs are not entitled to a fee award because they are not prevailing parties for the purposes of § 1988.[9]

The law in this area is relatively clear. If judgment is entered for the plaintiff, we look to the Supreme Court's decision in *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) to determine whether he qualifies as a prevailing party under § 1988. There the Court held that

> a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Id.* at ——, 113 S.Ct. at 573. If the plaintiff obtains relief through settlement or a voluntary change in behavior rather than a judgment, we look to a two-part test, sometimes called "the catalyst rule," to determine whether he should be considered a prevailing party.[10] *See Zinn v. Shalala*, 35 F.3d 273, 274 (7th Cir.1994); *Dixon v. City of Chicago*, 948 F.2d 355 (7th Cir.1991). "First, 'the plaintiffs' lawsuit must be causally linked to

the achievement of the relief obtained,' and second, 'the defendant must not have acted wholly gratuitously, i.e. the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless.'" *Zinn*, 35 F.3d at 274 (quoting *Stewart v. McGinnis*, 5 F.3d 1031, 1039 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994)); *see also Brown v. Griggsville Com. Unit School Dist. No. 4*, 12 F.3d 681, 685 (7th Cir.1993) (a litigant is not a prevailing party if the change was on account of "a reason unrelated to the proceeding"); *Cady v. City of Chicago*, 43 F.3d 326, 328–29 (7th Cir. 1994). A district court's determination of causation is a factual determination that is reviewed under the clearly erroneous standard. *Brown*, 12 F.3d at 685.

The Union argues that the district court's order declaring that the Union's fair share practice violated *Hudson* was "a judicial pronouncement [that does] not entitle Croker and Johnson to enforce anything," Appellant's Br. at 18, and therefore has not "materially alter[ed] the legal relationship between the parties." *See Farrar*, —— U.S. at ——, 113 S.Ct. at 573. The Union further asserts that since it "voluntarily" amended its procedures, this lawsuit is not causally linked to any change favorable to plaintiffs. *See Zinn*, 35 F.3d at 274.

We disagree. The district court determined that the Union came into compliance with the constitutional requirements of *Hud-*

Practice and Procedure, Judicial Conference of the United States, *Report of the Local Rules Project: Local Rules on Civil Practice* (1989). The Report discloses that the Central District of California alone then had thirty-one local rules with 434 "sub-rules," supplemented by approximately 275 standing orders. The Civil Justice Reform Act has added further emphasis to reliance upon local experimentation, causing some to conclude that local plan provisions override the national federal rules. Edward D. Cavanagh, ALI–ABA Video Law Review Study Materials: New Directions in Federal Civil Procedure and Practice, *The Civil Justice Reform Act of 1990 and the 1993 Amendments to the Federal Rules of Civil Procedure: Peaceful Co–Existence?*, at p. 485. Others, perhaps implicitly agreeing, have viewed recent developments as a detrimental fragmenting of a national system. *See* Carl Tobias, "Civil Justice Reform and the Balkanization of Federal Civil Procedure", 24 Ariz.St.L.J. 1393 (1992). We need not enter that fray, except to note that those

developments caution against an overly restrictive view of a local initiative here.

**9.** Section 1988(b) states in part: "In any action or proceeding [under § 1983] ... of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

**10.** In *Zinn* we held that the catalyst rule survives *Farrar* despite the somewhat contradictory language in that opinion. *See, e.g., Farrar*, —— U.S. at ——, 113 S.Ct. at 573 ("The plaintiff must obtain an enforceable judgement against the defendant from whom fees are sought"). We held that it was unlikely that the Court intended to overturn the catalyst rule, which at that point was settled law enjoying nationwide acceptance, without any indication it was so doing. *Zinn*, 35 F.3d at 275–76.

*son* as result of this lawsuit and made the specific factual finding that the Union did not alter its procedures voluntarily. The court's findings are supported by the fact that the Union failed to comply with *Hudson* for six years and only modified its procedures after the commencement of the lawsuit. Furthermore, the court determined that *Hudson* required the Union to have its expenses verified by an independent auditor, which the Union had not voluntarily done to that point. The Union has made the requisite financial disclosures, a change in the Union's behavior which materially benefits plaintiffs and which was unquestionably a result of this lawsuit. Plaintiffs thus qualify as prevailing parties under § 1988.

#### C. *Was the Award of Fees "Reasonable"?*

█ The Union claims that even if plaintiffs can be considered prevailing parties, the fee award was unreasonable in light of their allegedly *de minimis* victory. The Union relies on a line of Supreme Court and Seventh Circuit cases finding that a nominal damage award does not justify attorney's fees. *See generally Farrar,* —— U.S. ——, 113 S.Ct. 566; *Maul v. Constan,* 23 F.3d 143 (7th Cir.1994).

█ This circuit has adopted the three-part test laid out in the concurring opinion of Justice O'Connor in *Farrar* to determine whether a prevailing party has achieved a mere technical victory inappropriate for fees. We should "look at the difference between the judgment recovered and the recovery sought, the significance of the legal issue on which the plaintiff prevailed and, finally, the public purpose of the litigation." *Cartwright v. Stamper,* 7 F.3d 106, 109 (7th Cir.1993) (citing *Farrar,* —— U.S. at —— – ——, 113 S.Ct. at 578–79 (O'Connor, J., concurring)). A district court's analysis of these factors,

and its determination as to the appropriateness of a fee award, is afforded "great discretion" and will not be disturbed unless it constitutes an abuse of discretion. *Id.*

Here the district court properly applied the three-part test, and its decision to award a fee was not an abuse of discretion. On the first element, the district court determined that plaintiffs achieved the end goal of the litigation by forcing the Union into compliance with *Hudson.* The mere fact that this goal was achieved through the Union's prejudgment decision to amend its practices is unimportant in light of the district court's conclusion that the Union would not have acted absent the lawsuit. Plaintiffs won a declaratory judgment, and the district court concluded that injunctive relief was unnecessary in light of the Union's remedial actions.[11] Moreover, damages were never a serious part of this lawsuit, which is reflected in plaintiffs' prayer for only nominal damages. On the second element, the district court found that the legal issues presented were of great importance. Indeed, the Supreme Court has noted that "'procedural safeguards have special bite in the First Amendment context.'" *Hudson,* 475 U.S. at 303 n. 12, 106 S.Ct. at 1074 n. 12 (quoting G. Gunther, *Cases and Materials on Constitutional Law* 1373 (10th ed. 1980)). As for the final element, the district court concluded that since plaintiffs' success "ensures proper procedure for each future non-member prior to payment of their fair share fee," plaintiffs' success serves the public purpose. Since the Union offers no compelling reason why these conclusions amount to an abuse of discretion, we will not disturb the district court's decision to award a fee.[12]

#### D. *Did Plaintiffs Incur "Costs"*

█ The Union argues that since Johnson and Croker received their legal representa-

---

**11.** The district court did take into account plaintiffs' incomplete success by reducing the award by 25%.

**12.** The AFL–CIO as *amicus* argues that unions should be immune from § 1988 liability because of their special role in ensuring "industrial peace." The AFL–CIO warns that large fee awards may financially cripple smaller unions, thus removing them as collective bargaining agents. It cites for support *International Broth-*

*erhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), which held that unions are immune from punitive damage awards for breaches of the duty of fair representation. We decline to adopt such a sweeping rule. Rather, we will continue to rely on the established caselaw to determine whether a non-union municipal employee is entitled to attorney's fees in cases such as this.

tion from a foundation that provides legal representation at no charge,[13] they have not incurred any costs or fees appropriate for a fee award. The Union cites *Barrow v. Falck,* 977 F.2d 1100, 1105 (7th Cir.1992), as support. In *Barrow* we held that a "reasonable" attorney's fee is the market rate for the attorney's time, and "the market rate for legal time is the opportunity cost of that time, the income foregone by representing this plaintiff." *Barrow,* 977 F.2d at 1105. The Union argues that since the NRTWF lawyers who prosecuted this case would have had no paying clients anyway, the opportunity cost of their working on this case is zero.

The Union's argument misreads *Barrow* and runs counter to Supreme Court caselaw. *Barrow* is wholly inapposite. The issue there was whether an attorney could recover the rate other lawyers in the area charge, when he has never charged that rate. We held that the best place to look to determine a reasonable fee is what the attorney usually charges his paying clients. In such a situation the amount the attorney would have received had he been working on another case is the "market rate" for that attorney. *Barrow,* 977 F.2d at 1105. *Barrow* does not, however, address the situation of a legal assistance attorney who has no regularly paying clients and therefore no "opportunity cost rate."

Rather than *Barrow,* this case is governed by the Supreme Court's decision in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). There the Court held that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a non-profit legal services association." *Id.* at 894, 104 S.Ct. at 1547. The Court in *Blum* upheld the fee award for lawyers from the Legal Aid Society of New York, which, like the NRTWF, is a private non-profit legal assistance organization. The Court then allowed the charitable foundation attorneys to recover fees at the market rate for attorneys in the area. *Blum,* 465 U.S. at 894, 104 S.Ct. at 1547. The district court was correct to do

the same here. Plaintiffs are entitled to recover attorney's fees as measured by the prevailing market rate, whether or not their representation was an act of charity from a non-profit legal assistance foundation.

We affirm the award of attorney's fees.

---

**13.** Although the NRTWF provided legal representation at no charge, Johnson and Croker executed a retainer agreement which allowed the NRTWF to publicize the good works performed by the foundation.