**Stephan A. RICE, Plaintiff,**

v.

**GENOVA PRODUCTS, INC., Defendant.**

**No. 1:95–CV–201.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 11, 1997.

---

outcome of proceedings pursuant to Department of Transportation regulations. On September 18, 1996, the court ordered the parties to engage in a further mediation session, and granted Genova permission to file a Motion to Dismiss within 30 days following the mediation if said mediation was unsuccessful.[1] Subsequently, on March 26, 1997, the court held a telephone status conference in this matter. A briefing schedule was established to allow the parties to submit further briefing on the Motion for Summary Judgment, and to permit Rice to file a Motion for Partial Summary Judgment. Supplemental briefing pertaining to Genova's Motion for Summary Judgment and briefing pertaining to Rice's Motion for Partial Summary Judgment was all completed by May 22, 1997. Finally, Genova submitted supplemental authority in support of its Motion for Summary Judgment on May 29, 1997 and both motions are now ripe for resolution. For the reasons discussed below, Genova's Motion to Strike is deemed MOOT, Genova's Motion for Summary Judgment is GRANTED, and Rice's Motion for Partial Summary Judgment is DENIED.

John T. Menzie, Eric H.J. Stahlhut, Gallucci, Hopkins and Theisen, PC, Fort Wayne, IN, for plaintiff.

Steven L. Jackson, Jeffrey A. Townsend, Maria C. Campo, Baker and Daniels, Fort Wayne, IN, for defendant.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on the Motion for Summary Judgment filed by Defendant Genova Products, Inc. ("Genova") on March 18, 1996. Plaintiff Stephan Rice ("Rice") filed a response on April 5, 1996, and Genova filed a reply on April 16, 1996. Also on that date, Genova filed a motion to strike an affidavit submitted by Rice, along with portions of Rice's Statement of Genuine Issues, to which Rice responded on April 24, 1996. On May 8, 1996, the court issued an Order staying these proceedings pending the

## STATEMENT OF FACTS

Stephan Rice was an over-the-road truck driver for Genova. He was hired by the company in 1983. On August 8, 1994, while driving a tractor trailer on an interstate highway in New York state, Rice lost consciousness and his vehicle went off the road and slid down a hill. Rice remembers virtually nothing about the accident. Following the accident, Rice spent approximately two months recuperating. During that period, Rice saw both his family doctor, Dr. Mohrman, and his cardiologist, Dr. Jones. On October 3, 1994, Dr. Mohrman, after reviewing medical reports prepared by Dr. Jones, wrote a letter indicating that he believed Rice was medically fit to return to work driving trucks. Later that same month, Genova's Medical Review Officer, Dr. Hickman, also reviewed Rice's medical records and test results which he had received from Dr. Jones. Dr. Hickman concluded that Rice

1. The Motion to Dismiss was denied by Order entered on March 17, 1997.

was *not* fit to return to work and refused to recertify him as required by Department of Transportation regulations. For several months, Rice attempted to get recertified and to return to work. Genova, claiming that it believed that Rice could not be recertified, refused to reinstate him. On June 23, 1995, Rice filed this action against Genova alleging a violation of the ADA. Rice contends that Genova violated the ADA by not reinstating him because the company perceived him as having a disability known as syncope (a condition that can cause occasional loss of consciousness). One year after this suit was filed, in June of 1996, Rice and Genova agreed that he should be examined by yet another physician, Dr. Porter.[2] Dr. Porter examined Rice and certified him to resume his career as a truck driver. Soon thereafter, Genova did in fact reinstate Rice. More facts will be set forth as necessary throughout this Order.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 251–53, 106 S.Ct. at 2512; *In re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High Sch. Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–51, 106 S.Ct. at 2511.

---

**2.** More specifically, this court held a conference on April 29, 1996, wherein the parties discussed the issue of staying the case pending the outcome of a physical examination of Rice by an impartial medical specialist. Rice and Genova agreed that the exam should be conducted by Dr. Porter, a neurologist who, as stated, cleared Rice to return to work. Genova reinstated Rice into his job as an over-the-road truck driver on September 6, 1996.

In employment discrimination matters, the standard on summary judgment is applied with "added rigor." *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). The Seventh Circuit reiterated this standard in *Robinson v. PPG Industries, Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994), citing the standard set out in *Sarsha:*

> Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict. (Citations omitted.)

## DISCUSSION

### 1. Genova's Motion to Strike

█ Genova filed a motion to strike certain portions of Rice's affidavit (submitted as Exhibit 22 of Plaintiff's Evidentiary Material) and portions of Rice's Statement of Genuine Issues of Material Facts. Specifically, the motion seeks to strike 21 paragraphs from Rice's Facts since Genova claims "they rely on inadmissible evidence contained in Rice's affidavit." Memorandum in Support of Motion to Strike, p. 4. Thus, the motion essentially targets that affidavit and seeks to strike 20 of the 44 paragraphs contained therein. Genova argues that the portions referred to are inadmissible because they contradict Rice's deposition testimony, contain hearsay, and/or are based on speculation and conjecture. Genova submitted a 25–page memorandum in support of its motion, discussing each paragraph the company wants stricken from Rice's affidavit and Statement of Facts. Rice, in turn, submitted a 25–page brief in opposition, also addressing

each paragraph. However, the court has determined that the motion is rendered moot in light of the fact that summary judgment is being granted in favor of Genova. Thus, in the interest of judicial economy, it is not necessary for the court to engage in a detailed discussion of each and every paragraph that is the subject of the motion.

Many of the paragraphs referred to in Genova's motion pertain to whether Rice and Genova had any sort of agreement regarding the procedure Rice was to follow in order to get reinstated as a truck driver. These paragraphs are rendered moot in any case, since the issue of the agreement between Rice and Genova was addressed by the court in its March 17, 1997 Order denying Genova's Motion to Dismiss. Notwithstanding the fact that Genova's motion to strike appears well taken as to at least some of the other paragraphs contained in Rice's affidavit and Statement of Facts, they too are rendered moot since they do not affect the court's analysis of the motion for summary judgment. Even if the paragraphs were not stricken from the record, their inclusion would not alter the court's ruling on the motion for summary judgment. For the foregoing reasons, Genova's motion to strike is MOOT.

### 2. Genova's Motion for Summary Judgment

In *DeLuca v. Winer Industries, Inc.,* 53 F.3d 793, 797 (7th Cir.1995), the Seventh Circuit applied the *McDonnell–Douglas* test to the ADA, citing several cases that had already analyzed ADA cases under this framework.[3] *See DeLuca,* 53 F.3d at 797. The *prima facie* case as set forth in *DeLuca* requires the plaintiff "to prove that (1) he is a member of a protected class; (2) his work performance met the employer's legitimate job expectations; (3) his employment was terminated; and ... (4) employees not in the protected class were treated more favorably." With regard to the first element of

---

**3.** Rice also argues that he has direct evidence of discrimination, in the form of a letter he received from Genova management. Plaintiff's Memorandum, p. 12. However, as is discussed later in this Order, that letter (which is the only direct

evidence Rice claims to have of discriminatory intent) is not inconsistent with Genova's proffered nondiscriminatory reason for terminating Rice.

the *prima facie* case, the Seventh Circuit noted that "[t]he protected class under the ADA encompasses 'qualified individual[s] with a disability.' 42 U.S.C. § 12112. The ADA defines that term as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' 42 U.S.C. § 12111(8)." 53 F.3d at 797 n. 3.

The court further stated:

Once a plaintiff establishes all four elements the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for firing the plaintiff. If the defendant meets this burden, the plaintiff must then prove that the employer's stated reason is merely a pretext for discriminatory action, either "directly or with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha*, 3 F.3d at 1039. "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, [507] 113 S.Ct. 2742, 2747 [125 L.Ed.2d 407] (1993).

53 F.3d at 797–98.

▮ In the present case, Rice does not argue that he was disabled. Instead, he argues that he is protected by the ADA because Genova *regarded* him as disabled. Plaintiffs Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum"), p. 12. It is true that the ADA defines disability as:

(a) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(b) A record of such impairment; or

(c) *Being regarded as having such an impairment.*

42 U.S.C. § 12102(2) (italics added). In this case, both parties debate at length in their briefs the issue of whether Rice is a qualified individual under the ADA. Genova contends that plaintiff is not a qualified individual under the ADA because the company did not

perceive him as disabled. Rather, the company contends, it merely perceived him as uncertifiable under DOT regulations and, relying on the medical evidence it received, felt it had no choice in not allowing him to drive trucks. Genova also argues that even if Rice does establish that he is protected by the ADA, he has offered no evidence of pretext. Because Rice has demonstrated no evidence of pretext the court need not address the issue of whether he is a qualified individual. That is, even assuming that Genova perceived Rice as having a disability, Rice has failed to establish that the company's proffered reason for terminating him was pretextual. *See Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1309 (7th Cir.1997) (courts can proceed to threshold issue of whether proffered reason was pretextual without determining whether plaintiff made out a prima facie case of discrimination). Furthermore, it is undisputed that once Genova determined that Rice could not be recertified to drive trucks, the company offered him a full-time position in its warehouse, which Rice refused. Defendant's Evidentiary Materials, Exh. A, Rice Deposition, pp. 128, 130, 131; Exh. B, Dinkgrave Deposition, pp. 57–58. Thus, again assuming that Rice was a qualified individual under the ADA, Genova fulfilled its statutory duty to offer him a reasonable accommodation. In light of this evidence, the only real issue in this case is whether Genova's reason for not reinstating Rice and for later terminating him was pretextual.

▮ Rice claims that Genova's "[argument] that Rice was terminated because he could not meet D.O.T. requirement[s] for recertification ... is a total distortion of the facts of this case, and raises further issues of material fact which preclude summary judgment. As Defendant knows full well, Rice was recertified after meeting the D.O.T. qualifications." Plaintiff's Memorandum, p. 18. That is true, although not relevant. What is relevant is what Genova knew at the time it terminated Rice, not that the company learned much later that Rice was qualified to drive. The company's belief that Rice could not be recertified was later proven to be wrong. However, as Genova points out, "[i]n examining pretext, the question is

whether the employer honestly believed its proffered reason for discharge." *Essex*, 111 F.3d at 1310 (citations omitted). Furthermore, "[t]he fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Id.* (citations omitted).

Genova argues that it had a legitimate, nondiscriminatory reason for refusing to reinstate Rice as a truck driver. The company claims that it had a good faith belief that Rice could not be recertified under the DOT regulations to drive a truck and so the company had no choice but to refuse to allow him to drive. Genova states that it "terminated Rice solely because [Dr.] Hickman concluded that Rice could not be recertified under DOT regulations." Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memorandum"), p. 5. As Genova points out, "[t]he DOT regulations are mandatory, not permissive, and explicitly require that a person must be physically qualified to drive a commercial vehicle...." *Id.*, p. 15. The DOT regulations state, in relevant part:

A person shall not drive a commercial motor vehicle unless he/she is physically qualified to do so ...

A person is physically qualified to drive a commercial motor vehicle if that person—

. . . . .

Has no established medical history or clinical diagnosis of epilepsy or any other condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle.

49 C.F.R. § 391.41(a) and 391.41(b)(8). Clearly, if Genova believed, as it contends, that Rice had syncope, then it had a legitimate reason to believe that he could not be recertified so as to satisfy the DOT regulations.

As stated above, following Rice's accident he was examined by Dr. Jones on August 31, 1994. Defendant's Evidentiary Materials, Exh. C, Jones Deposition, p. 16. Dr. Jones took a medical history from Rice, which disclosed that Rice had suffered loss of consciousness twice prior to his accident. *Id.,*

pp. 18–19. Dr. Hickman stated that he "received medical data pertaining to Mr. Rice including a copy of Mr. Rice's medical history furnished by his cardiologist, Dr. Jones. After reviewing this data, I informed Norman Stratton that the medical history furnished by Dr. Jones showed the existence of three episodes of syncope. Thus, I informed Stratton that I could not recertify Mr. Stephan Rice to drive a truck for Genova because he no longer met the minimum requirement for DOT licensure as a truck driver." *Id.*, Exh. F, Hickman Affidavit, ¶ 5. Dr. Hickman also stated that he "informed Mr. Dinkgrave that Mr. Rice could not be recertified.... because he was not qualified pursuant to the DOT" regulations. *Id.*, ¶ 6. Relying on Dr. Hickman's assessment, Genova sent Rice a letter on November 24, 1994, informing him that the company could no longer let him drive trucks. Plaintiffs Evidentiary Material, Exh. 12. Plaintiff seizes on certain language contained in that letter in support of his claim that Genova's proffered reason for terminating him was pretextual. In that letter, the company stated that Rice's "episodes of syncope are a source of great concern to Genova ..." and that due to "the uncertainty surrounding your episodes of syncope and never knowing when another episode will occur, we are unable to continue your employment as a truck driver...." *Id.* Rice argues that that language establishes that Genova perceived Rice as being disabled and terminated him for that reason. Rice also argues that the fact that Dr. "Hickman's name is not mentioned in the letter[.]" is further proof that the company officials themselves perceived Rice as disabled, that their professed concerns about DOT recertification were merely pretext and that they actually terminated Rice out of "an irrational fear that Rice was unfit to drive—precisely the type of fear the ADA was designed to eradicate." Plaintiff's Memorandum, p. 17. But Rice's reasoning requires a leap of faith not supported by the evidence. The November 22, 1994 letter is not inconsistent with Genova's proffered reason for terminating Rice. First of all, the fact that Dr. Hickman is not referred to in the letter is irrelevant. While Dr. Hickman is not referred to by name, the letter does state that "[b]ased on the episode of syncope that

caused this accident, and your subsequent medical evaluations, which indicate 2 previous episodes of syncope ... *Genova was advised that you no longer met the minimum DOT requirements* to continue your employment as a truck driver." Plaintiff's Evidentiary Material, Exh. 12 (italics added). This comports with the deposition testimony of Dinkgrave and the affidavit of Dr. Hickman, which indicate that Dinkgrave was relying on Dr. Hickman's medical opinion regarding recertification of Rice when he wrote the November 22, 1994 letter.[4] The letter further states that "[a]s an ICC private carrier, *governed by the DOT regulations,* we have a mandate to protect the safety of the public as we travel the highways delivering our product." *Id.* (italics added). The language of the letter lends credence to Genova's claim that it refused to reinstate Rice as a truck driver because it had a good faith belief that he could not be recertified to drive under the DOT regulations. As stated previously, such a belief, even if it was later proven to be erroneous, would not have been illegal.[5]

Still, Rice argues that the fact that Genova would not reinstate him despite the subsequent medical information submitted by Dr. Jones that purported to release Rice to drive pursuant to the DOT regulations, evidences that the company's decision to terminate his employment was discriminatory. That is to say, since he obtained DOT medical clearance and the company still refused to reinstate him, Genova's proffered nondiscriminatory reason goes up in smoke. Notwithstanding his determination in October of 1994 that Rice could not be permitted to drive, Dr. Hickman did in fact agree to "entertain additional information provided by Rice in order to reassess his qualifications under the DOT regulations." Defendant's Evidentiary Material, Exh. F, Hickman Affidavit, ¶ 7. Sometime in mid-February of

1995, Dr. Hickman received the results of the additional tests Dr. Jones subsequently performed on Rice, including a "tilt table test," and he stated that he "informed Mr. Dinkgrave that Dr. Jones was a cardiologist and that the tilt table test from Dr. Jones merely ruled out that Mr. Rice's syncope was not of a neurocardiogenic origin. I informed Mr. Dinkgrave that I could not recertify Mr. Rice to drive a truck for Genova under DOT regulations until Mr. Rice received full clearance from a qualified neurologist." *Id.,* ¶ 8. In fact, Dr. Jones himself admitted that while he ruled out the possibility that Rice's syncope was the result of a cardiac condition, he did not rule out other possible physical sources of the episodes. *Id.,* Exh. C, Jones Deposition, pp. 29–30. Rice does not dispute the fact that he did not go to a neurologist after being told by Genova that he would have to do so if he wished to resume driving. Instead, Rice argues that he could not afford to go to a neurologist and attempts to shift the blame for his failure onto Genova. He states that "Genova made the request of Rice to be examined by a 'qualified neurologist' after it knew full well that Rice's health insurance had lapsed and that he would have to bear the prohibitive expense of obtaining this examination." Plaintiff's Memorandum, p. 7. This argument, even if true, does nothing to support Rice's argument that Genova's termination of his employment was illegal. As Genova points out, the letter of March 17, 1995, stating that the company would reconsider its position if Rice was cleared by a neurologist, was written by Genova's Detroit-based counsel and forwarded to Rice's attorney. Plaintiff's Evidentiary Material, Exh. 9. Rice does not dispute the fact that neither he nor his attorney inquired as to whether Genova was willing to pay for this exam. In fact, Genova states that "Rice ... never responded to this letter." Defendant's Memorandum, p. 4. In fact, Rice testified not

---

**4.** The letter was signed by Genova manager Norm Stratton, but the parties have stipulated that Dinkgrave was actually the author.

**5.** The court also notes that in this same letter Genova stated that it was "prepared to continue your employment in a different capacity by offering you a position in the warehouse.... This is a full-time position at a rate of pay of $9.50 per

hour with standard benefits." As stated previously, even if Genova did regard Rice as having a disability, affording him the protection of the ADA, the company offered him the warehouse position, which may have constituted an offer of reasonable accommodation. Rice, of course, refused that offer.

only that he could not afford to go to a neurologist, but that he "didn't see any reason to go to another doctor." Defendant's Evidentiary Material, Exh. A, Rice Depo., p. 137. As a result, Dinkgrave issued a Personnel Status Report on May 9, 1995 documenting Rice's "separation" from Genova because Rice's "failed to respond to a 3/14/95 letter from our attorney regarding his medical condition—considered to be a voluntary quit." Plaintiffs Evidentiary Material, Exh. 15. Rice claims that this personnel report is evidence of the pretextual nature of Genova's proffered reason for terminating him. He argues that while the company claims it terminated Rice due to its belief that he could not meet DOT regulations, "the change of status form ... does not list this as the reason for Rice's termination." Plaintiff's Response, p. 24. Rice is attempting to argue that the reason given on the personnel report for Rice's separation from the company—that he failed to respond to the March 14, 1995 letter from Genova's attorney—is different from the company's proffered reason that it believed he could not be recertified. Rice claims that this is evidence that "Genova's own story regarding Rice is inconsistent. However, like the language in Dinkgrave's November 1994 letter, the wording in the personnel report is not inconsistent with Genova's position. The report does reference Rice's "medical condition," which confirms that the company had a concern about Rice's physical ability to perform his job. The mere fact that the report does not expressly state that Rice was being terminated because the company did not think he could be recertified, and that he refused to take the warehouse position offered to him, does not render the company's reason bogus. This is especially true in light of all the other evidence of Genova's concern about the DOT regulations and the issue of Rice's ability to be recertified. The personnel report contains only one line on which an explanation for a personnel decision is to be set forth. Dinkgrave's failure, if it was a failure, to more accurately or completely explain the reason behind the company's decision on that form is not enough to establish that its decision was discriminatory.

Genova argues that it had a right to rely on Dr. Hickman's opinion as to Rice's medical condition and whether Rice could be recertified to drive. In support of this argument, Genova cites the case of *Campbell v. Federal Express Corporation,* 918 F.Supp. 912 (D.Md.1996). In *Campbell,* the plaintiff brought an ADA claim against Federal Express. He argued that he had been found to be qualified under DOT regulations to drive by a physician for a rival carrier. However, medical specialists for Federal Express determined that Campbell was *not* certifiable under the regulations and as a result the company withdrew a conditional offer of employment it had extended. The court held that "[a]s a matter of law, Federal Express was not bound to accede to determinations made by medical professionals retained by its competitors; Federal Express was entitled to rely on the determinations made by its medical professionals. It is exactly because reasonable medical judgments as to such subjective assessments, made in good faith, may reasonably differ, that an extra-statutory exhaustion requirement is justified here." *Id.* at 918. Rice argues that the *Campbell* case is not applicable because Dr. Hickman never examined Rice, whereas the medical personnel for Federal Express did examine Campbell. Plaintiff's Sur Reply, p. 2. This, however, is not relevant. Perhaps it would have been prudent for Dr. Hickman to examine Rice. But that is not the point. Dr. Hickman, after reviewing Rice's medical records, concluded that Rice's medical condition was such that he could not meet the DOT regulations for recertification. As the *Campbell* case points out, Genova had a right to rely on that medical opinion. It matters not the basis on which that opinion was formed, only that it was communicated to Genova and the company relied on it in making its employment decisions regarding Rice. Again, the fact that Dr. Hickman's opinion later proved incorrect does not establish that Genova's decision regarding Rice was pretextual. As Genova points out, the Seventh Circuit explained in *Wolf v. Buss (America), Inc.,* 77 F.3d 914 (7th Cir.1996) that "[p]retext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.' ... It

is not sufficient ... for the employee to show that the employer acted incorrectly or undesirably in firing him; the employee must show that the employer did not honestly believe in the reasons it gave for firing him." *Id.* at 919 (quoting *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995)).

■ As Genova also points out, its "reliance on DOT regulations, absent pretext, is a defense to a truck driver's ADA lawsuit." Defendant's Reply to Plaintiff's Supplemental Briefing, p. 7. In further support of its position, Genova cites the case of *Murphy v. United Parcel Service, Inc.*, 946 F.Supp. 872 (D.Kan.1996). In *Murphy*, a truck driver brought an ADA claim against UPS, arguing, as does Rice, that the company perceived him as disabled and fired him for that reason after learning that the plaintiff's blood pressure was too high according to DOT standards. UPS argued that "it did not regard Murphy as disabled but only that he was not certifiable under DOT regulations." *Id.* at 882. Murphy's blood pressure problem was discovered only after he had been hired. Once UPS learned of the problem, it determined that Murphy's DOT certification was erroneous. Still, Murphy argued that he should be allowed to continue driving. The court granted summary judgment in favor of UPS, stating that "[b]ecause there is no evidence demonstrating that UPS' reliance on the DOT regulations was pretextual, and because the qualification standard was clearly job related, UPS' reliance on the DOT regulations is a defense to Murphy's ADA claims." *Id.* at 884. The court elaborated on this point by stating:

> Acceptance of Murphy's alternative argument—that UPS should have simply allowed him to continue driving on the erroneously issued DOT certification—would set a dangerous precedent. Once UPS learned that Murphy's DOT certification had been issued in error, it could not simply overlook that fact. Placing an uncertified person behind the wheel of one of its vehicles would have potentially exposed UPS to civil and criminal liability.... The ADA does not require an employer to

accommodate a person's disability by ignoring other duties imposed by law.

*Id.* at 883. Indeed, it is well established in the case law, the ADA itself, and the legislative history of the Act that reliance on a federal requirement or regulation constitutes a defense to an ADA claim, absent evidence of pretext. *See Campbell*, 918 F.Supp. at 917. Genova has presented much evidence that its decision not to reinstate Rice and its subsequent decision to end his employment were based on its good faith belief (or, more accurately, its reliance on Dr. Hickman's good faith belief) that he simply could not be recertified under DOT regulations. Furthermore, as stated previously, even assuming Genova perceived Rice as disabled, the company did not immediately fire him for that reason. Rather, management offered what it thought was a reasonable accommodation, which Rice refused. Rice fails to present evidence establishing that Genova's concern about his medical condition and resultant inability to be recertified, on which the company based its employment decision, was pretext for discrimination. For all of the foregoing reasons, Genova's Motion for Summary Judgment is GRANTED.

### 3. Plaintiff's Motion for Partial Summary Judgment

■ As stated at the outset, Rice filed a motion for partial summary judgment on April 24, 1997. Rice argues that he is entitled to be considered a prevailing party in this case. He bases his argument on the fact that he was ultimately recertified and reinstated as a truck driver. As Rice properly points out, "[t]he ADA allows a prevailing party to recover a reasonable attorneys' fee, including litigation expenses and costs if that party prevails on its claim." Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiff's Memorandum"), p. 9 (citing 42 U.S.C. § 12205). "To qualify as a 'prevailing party,' a plaintiff must succeed on a significant issue in litigation 'which achieves some of the benefit [he] sought in bringing suit.'" *Cady v. City of Chicago*, 43 F.3d 326, 328 (7th Cir.1994) (cita-

tions omitted). "A plaintiff need not litigate the suit to judgment but can 'prevail' if the litigation causes the defendant to act voluntarily in a way that 'affords the plaintiff all or some of the relief he sought through a judgment—e.g., a monetary settlement or a change in conduct that redresses the plaintiff's grievances.'" *Id.* (citations omitted). This is the direct test for determining whether a party is a "prevailing party." The Seventh Circuit has further explained that "[i]f judgment is entered for the plaintiff, we look to the Supreme Court's decision in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) to determine whether he qualifies as a prevailing party … [In *Farrar* ] the Court held that 'a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Johnson v. Lafayette Fire Fighters Association Local 472,* 51 F.3d 726, 730 (7th Cir.1995) (quoting *Farrar,* 506 U.S. at 111–12, 113 S.Ct. at 573). In the present case, Rice argues that he meets this direct test since he ultimately achieved his goal of reinstatement as a truck driver. Rice argues that he "has succeeded on a significant issue in the litigation by proving his fitness for duty and by securing reinstatement to his truck driving position at Genova. Plaintiff's Memorandum, p. 11. Genova argues that Rice fails the direct test because he "has achieved no judicial victories. There has been no injunctive relief ordered, nor has there been a judgment on the merits.... The only substantive order entered by the court has been the denial of Genova's motion to dismiss. It is clear that Rice's survival of a motion to dismiss 'creates no right in fees.'" Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Memorandum"), pp. 6–7 (quoting *Libby by Libby v. Illinois High School Association,* 921 F.2d 96, 99 (7th Cir.1990)). Despite the fact that he has obtained no judgment or judicial pronouncement in his favor, Rice argues that he meets the direct test for prevailing party status because he succeeded on a "significant issue" in this case. A careful reading of the case law regarding prevailing party status, however, indicates that more is needed under this direct test. As the First Circuit explained in a frequently cited case, the direct test "states the obvious, namely, that a party has prevailed if it wins the litigation." *Coalition for Basic Human Needs v. King,* 691 F.2d 597, 599 (1st Cir.1982). The First Circuit went on to explain that the language in the case law that bestowed prevailing party status on a plaintiff who succeeded "on any significant issue" was intended for a plaintiff "who prevailed as to *some,* but not *all,* of his claims." *Id.* Rice has clearly not prevailed on a claim or issue in this litigation, especially in light of the court's grant of summary judgment in favor of Genova. What he actually succeeded in doing was obtaining a portion of the relief he was seeking without prevailing on a claim. However, as discussed below, even this "success" is rather tenuously related to this lawsuit. In light of this, he cannot satisfy the first, or direct, test for prevailing party status.

■ Thus, to obtain prevailing party status, Rice must meet the second test for such status, known as the "catalyst test." *See Zinn v. Shalala,* 35 F.3d 273 (7th Cir. 1994); *Dixon v. City of Chicago,* 948 F.2d 355 (7th Cir.1991). The catalyst test is two-pronged. "First, 'the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained,' and second, 'the defendant must not have acted wholly gratuitously, *i.e.,* the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless.'" *Zinn,* 35 F.3d at 274 (quoting *Stewart v. McGinnis,* 5 F.3d 1031, 1039 (7th Cir.1993), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994)). Rice argues that the lawsuit is indeed causally linked to the relief he obtained because "[i]f [he] had not pursued this lawsuit, there is no doubt that he would not be working—once again—as an over-the-road driver for Genova." Plaintiff's Memorandum, p. 11. Rice's reinstatement certainly "flowed out of" this litigation. However, to establish the causal link "requires the plaintiff to meet more than

just a 'but for' test; the plaintiff's lawsuit must have been a cause, 'in the same sense in which we speak of cause in tort and criminal law, of the attaining of his objective in bringing the suit.'" *Cady,* 43 F.3d at 328 (quoting *Brown v. Griggsville Community Unit School Dist. No. 4,* 12 F.3d 681, 685 (7th Cir.1993)). A plaintiff is not a prevailing party if the relief he obtains is the result of "a reason unrelated to the proceeding." *Brown,* 12 F.3d at 685.

■ There is no bright line test for determining when the relief obtained by a plaintiff is causally linked to a lawsuit. It is a factual determination to be made by the district court. *Johnson,* 51 F.3d at 730. A review of cases dealing with the issue is instructive. In *Johnson,* two nonunion firefighters brought a civil rights action against the local firefighters' union challenging the constitutionality of a fair share fee provision in the collective bargaining agreement that permitted the union to collect fees from non-union firefighters. The Union amended its fee practices before any judgment was entered. When the plaintiffs subsequently sought attorneys' fees the Union argued that "since it voluntarily amended its procedures, this lawsuit is not causally linked to any change favorable to plaintiffs." *Id.* at 730. However, the district court held, and the Seventh Circuit affirmed, that the Union complied with certain constitutional requirements as a result of the lawsuit and so plaintiffs were entitled to prevailing party status. The Seventh Circuit explained that "[t]he court's findings are supported by the fact that the Union failed to comply with [the constitutional requirements] for six years and only modified its procedures after the commencement of the lawsuit.... The Union has made the requisite financial disclosures, a change in the Union's behavior which materially benefits plaintiffs and which was unquestionably a result of this lawsuit." *Id.* at 731.

In *Cady,* the plaintiff sued the City of Chicago and the City's Department of Aviation alleging "that the defendants imposed unconstitutional prior restraints on his access to a public forum, a literature rack located outside the O'Hare Airport Chapel." *Cady,* 43 F.3d at 327. Cady sought a declaratory judgment that the City's practice of reviewing religious material to decide what could be displayed was unconstitutional. The City removed the rack altogether while the suit was pending, thereby denying the forum to anyone, and the district court dismissed the suit as moot. Cady petitioned for attorneys' fees, arguing that he was a prevailing party. The district court rejected his argument and "reasoned that Cady did not obtain what his lawsuit had set out to accomplish, which was 'to get an uncensored forum for distribution of his own religious literature.' ... It found that Cady had 'derived no benefit from this action, except perhaps the purely psychic satisfaction of having forced defendants to understand that their prior practice had violated the Constitution and therefore [had] to be abandoned.'" *Id.* at 328 (quoting the district court). The Seventh Circuit stated that "[t]he key inquiry in this case is whether Cady attained his objective in bringing the suit, or stated differently, whether the City's voluntary removal of the rack redressed Cady's grievances and directly benefitted him." *Id.* at 329. In affirming the district court, the Seventh Circuit explained that "[b]ecause the City ... removed the forum to which Cady sought access, Cady's grievances were not redressed by the City's voluntary measure—he still has no access to the rack in order to exercise his First Amendment rights. Thus, Cady's situation is unlike those cases where the plaintiffs became 'prevailing parties' when the defendants, either unilaterally or via settlement, ceased the precise conduct that the plaintiffs sought to enjoin." *Id.* The court further explained that in order to be a prevailing party, "a party need not obtain relief identical to the relief [that it] specifically demanded, as long as the relief obtained is of the same general type ... as when the result of the litigation shifts the status quo toward that which the plaintiff had hoped to obtain." *Id.* (internal citations and quotation marks omitted). Furthermore, wrote the court, "'moral satisfaction'

alone does not bestow 'prevailing party' status on a plaintiff.... The plaintiff must be able to point to a material alteration of the legal relationship of the parties, ... and no material alteration of the legal relationship of the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant ... or success in modifying the defendant's behavior to the plaintiff's direct advantage...." *Id.* at 330 (internal citations and quotation marks omitted). Finally, the Seventh Circuit also reaffirmed that "the prevailing party inquiry does not turn on the magnitude of the relief obtained, and the degree of the plaintiff's success does not affect eligibility for a fee award, ... a plaintiff must first cross the statutory threshold of prevailing party status." *Id.* at 331 (internal citations and quotation marks omitted).

In the present case, there is no doubt that Rice did not obtain the degree of success he wanted. He sought not only reinstatement, but also compensatory and punitive damages, costs, prejudgment interest, attorney's fees, and any appropriate equitable relief. See Complaint, p. 8.[6] While he did get reinstated, arguably as a result of this suit, he loses everything else he sought by virtue of losing on the merits of his ADA claim. The court was unable to locate any case precisely on point—that is, where a plaintiff's entire claim is lost on summary judgment but who nonetheless succeeded in obtaining *some* relief that would entitle him to prevailing party status. Rice's case falls somewhere between *Johnson,* where the plaintiffs succeeded in obtaining essentially what they wanted, and *Cady,* where the plaintiff achieved only a "moral victory" at best. Rice did get his job back and he did prove that Genova's belief that he could not be recertified was in error. The issue, then, is whether that benefit has a

strong enough causal link to this lawsuit to entitle him to prevailing party status. In this unusual factual situation, the court determines that the answer must be "no." As stated previously, Rice argues that were it not for his bringing this lawsuit, he would never have gotten his job back. That may be true as far as it goes. However, the court must also take into consideration the *reason* why this lawsuit resulted in reinstatement (which of course is simply another way of saying that the strength of the causal link must be examined). On April 29, 1996, the court held a hearing in this case. During that hearing, after much discussion regarding the DOT certification process and whether or not it had been followed, the court suggested to the parties the possibility of staying the proceedings so that the DOT requirement of examination by an impartial medical specialist could be properly fulfilled. Transcript, pp. 16–17. The court inquired of Genova's counsel whether the company would reinstate Rice if it was finally conclusively determined that he could be certified to drive. Genova's counsel responded, "I believe they will." *Id.* Rice's counsel was skeptical of the idea and the effect it might have on Rice's ability to pursue his damage claim. Transcript, pp. 21–22. The parties submitted briefs on the issue of a stay. Genova supported the idea while Rice continued to oppose it. Plaintiffs Position With Respect to Staying the Case Pending Proceedings Before the Department of Transportation, Record at 56. By Order entered on May 8, 1996, the court stayed the proceedings. Rice, of course, was cleared by a neurologist, obtained recertification, and was reinstated to his truck driving position. Genova argues that this is precisely what it requested of Rice in its March 1995 letter but that he failed to follow through with a neurological exam. Genova also points out that

---

6. Genova argues that while Rice did state in the first paragraph of his complaint that he was seeking reinstatement, "[n]o further mention of reinstatement is made in the complaint." Defendant's Memorandum, p. 8, n. 2. Genova further states that there is no mention of reinstatement in Rice's Prayer for Relief. *Id.* However, Rice did pray for "all appropriate legal and equitable relief." Since reinstatement is a proper form of

relief in employment discrimination cases, it seems irrelevant that Rice did not state it specifically in his Prayer for Relief. Also, as Rice points out, several paragraphs in his complaint refer to Genova's failure to reinstate him. Based on the overall tenor of his complaint, there can be no doubt that reinstatement was a part of the relief Rice sought by bringing this suit.

the recertification and resultant reinstatement was the result of a suggestion by the court, not by Rice. The company argues that "[i]t seems somewhat inequitable that Rice's counsel would oppose the Court's suggestion to pursue reinstatement, then seek fees when the Court's suggestion proved fruitful." Defendant's Memorandum, p. 13. That is essentially another way of stating that the causal link between the filing of this suit and the relief Rice finally obtained is too remote to afford Rice prevailing party status.

Genova also argues that the causal link between this suit and Rice's reinstatement does not entitle him to prevailing party status because the lawsuit did not act " 'as a catalyst to obtain concessions from the [defendant].' " Defendant's Memorandum, p. 9 (quoting *Libby*, 921 F.2d at 99). The company further argues that "Genova's behavior toward Rice did not change as a result of this lawsuit. Genova steadfastly maintained that it would not rehire Rice until he was cleared by a neurologist." *Id.* Genova points out that the court's May 8, 1996 Order merely forced Rice to comply with the company's request, rather than altering the company's behavior towards Rice or its legal obligation to him. *Id.* Genova had requested that Rice be examined by a neurologist some three months prior to this suit being filed. Thus, the lawsuit itself only reinvigorated the process proposed by Genova which ultimately led to Rice's reinstatement. The court agrees that while one could argue that Rice's reinstatement would not have finally occurred "but for" the instigation of this lawsuit, the causal link, based on the factual scenario presented in this case, is too remote and tenuous to entitle Rice to prevailing party status.

There are also, as Genova discusses, equitable reasons why Rice should not be granted prevailing party status. Genova cites the case of *Oshiver v. Philadelphia Court of Common Pleas*, 497 F.Supp. 416 (E.D.Pa. 1980). In *Oshiver*, the plaintiff brought suit alleging age and sex discrimination. The court issued a preliminary injunction ordering the defendant to reinstate the plaintiff pending final disposition of the case. Plain-

tiff sought prevailing party status prior to final resolution of the case. The district court noted that by issuing a preliminary injunction, he had found only that plaintiff had established a *prima facie* case of discrimination and that the ruling did not go to the merits of the case. The court then denied her request for prevailing party status and stated:

> ... we cannot believe Congress would have countenanced assessing fees against a defendant absent any showing of discrimination. For all we know, the defendants in this case may be entirely blameless. If attorney's fees were assessed against them at this point in the litigation, the ultimately successful party might end up having subsidized a large segment of the losing party's suit against him.

*Oshiver*, 497 F.Supp. at 418 (quoting *Grubbs v. Butz*, 548 F.2d 973, 976 (D.C.Cir.1976)). In the present case, of course, there has been a determination on the merits in favor of Genova. It would simply make no sense for this court to force a party it has determined did not discriminate against Rice to pay for any portion, let alone a large portion, of Rice's attorney's fees. For all of the foregoing reasons, the Motion for Partial Summary Judgment filed by Rice is DENIED.

## CONCLUSION

For the reasons discussed above, the Motion for Summary Judgment filed by defendant Genova Products, Inc. is GRANTED; the Motion for Partial Summary Judgment filed by plaintiff Stephan Rice is DENIED.